**UNITED STATES of America**

v.

**Frederick Freeman DARSEY.**

Crim. No. 72–133.

United States District Court,
E. D. Pennsylvania.

May 8, 1972.

Louis C. Bechtle, U. S. Atty., Barton A. Hertzbach, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

David Rudovsky, Philadelphia, Pa., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

The defendant in this case was originally charged in a fourteen count information charging eight violations of 47 U.S.C. § 223(1) (A), which provides that:

"Whoever—in the District of Columbia or in interstate or foreign com-

munication by means of telephone, makes any comment, request, suggestion, or proposal which is obscene, lewd, lascivious, filthy, or indecent, shall be fined not more than $500 or imprisoned not more than six months, or both."

and further charging six violations of 47 U.S.C. § 223(1) (D) provides that:

"Whoever—in the District of Columbia or in interstate or foreign communication by means of telephone, makes repeated telephone calls, during which conversation ensues, solely to harass any person at the called number, shall be fined not more than $500 or imprisoned not more than six months, or both."

Subsequent to the bringing of this information, a further information was filed, charging one count of violation of 47 U.S.C. § 223(1) (D). Jury trial was waived and trial was held on March 16, 1972, at which time the two informations were consolidated, and the United States moved to dismiss the seven counts relating to § 223(1) (A) and Count 14, relating to § 223(1) (D). That motion was granted and trial was held on the remaining six counts, all charging violations of § 223(1) (D). The defendant was found not guilty on all counts. This memorandum is written to set forth the rationale of that decision.

Section 223 of Title 47 was passed in 1968. It was drawn up as a single legislative proposal, and directed toward a fairly narrow though serious constellation of problem behavior. The meaning of any one part of § 223 can only be properly understood in the content of the whole of § 223, which reads as follows:

"§ 223.  Obscene or harassing telephone calls in the District of Columbia or in interstate or foreign communications

Whoever—

(1) in the District of Columbia or in interstate or foreign communication by means of telephone—

(A) makes any comment, request, suggestion or proposal which is obscene, lewd, lascivious, filthy, or indecent;

(B) makes a telephone call, whether or not conversation ensues, without disclosing his identity and with intent to annoy, abuse, threaten, or harass any person at the called number;

(C) makes or causes the telephone of another repeatedly or continuously to ring, with intent to harass any person at the called number; or

(D) makes repeated telephone calls, during which conversation ensues, solely to harass any person at the called number; or

(2) knowingly permits any telephone under his control to be used for any purpose prohibited by this section, shall be fined not more than $500 or imprisoned not more than six months, or both."

The legislative history of this section makes it clear that § 223(1) (A) was pointed at the problem of what is generally and colloquially understood to be an "obscene telephone call", that is, a verbal sexual or sado-sexual assault made over the telephone for the perverted pleasure derived from it.[1] The language of § 223(1) (A) was drawn broadly to prevent technical escape by the guilty. Nowhere in the legislative history is there the slightest intimation that this section was intended or should ever be interpreted to make criminal the use of ungenteel or vulgar language sometimes called "obscene" in the course of an interstate telephone conversation, either from habit, anger, or slanderous intent.[2]

1. See H.R.No.1109, Interstate and Foreign Commerce Committee, 1968 U.S. Code Cong. & Admin.News, p. 1915.

2. This Court is cognizant that this section appears once to have been interpreted otherwise by the Fifth Circuit in a case which, interestingly enough, involved the same defendant as this case, United States v. Darsey, 431 F.2d 963 (1970). This decision was handed

§ 223(1) (B) was directed at a somewhat different problem, the problem of anonymous phone calls. Most obscene phone calls are anonymous, but not all anonymous phone calls are obscene. The anonymity of the caller is in itself a circumstance raising discomfort and fear in the receiver of the call, and Congress decided that virtually any wilfully bad motive in making an anonymous phone call should be punishable.

§ 223(1) (C) was directed at still another problem, the problem of those who ring another's telephone to harass them with the ringing. It appears that the simple intent standard of "intent to harass" was used in § 223(1) (C) rather than the broader standard used in § 223(1) (B) or the narrower standard used in § 223(1) (D) because nothing broader or narrower was called for in light of the behavior prohibited by § 223(1) (C). Repeated ringing can have only two intents—benign, attempting to get in touch in good faith, and harassing. Therefore, since repeated ringing is so nearly content free, it presents few problems in defining standards by which to judge the intent with which it is done.

■ § 223(1) (D) with which we are chiefly concerned here, addresses itself to yet another problem, the problem which arises when repeated phone calls are made with the sole intent of harassment, even though conversation ensues which is not a sexual assault, and even though the phone call is not anonymous. The effect of this section is two-fold. It prevents ingenious persons from escaping the effect of the other sections by the structuring of their harassment, and it outlaws clear harassment under certain conditions by a person who is known or makes himself known to the party called. Yet, Congress was apparently very aware of the potential abuses of such a section when applied to the ordinary and not always amicable dealings of persons with one another which might happen to be over the telephone. To prevent the flooding of the Federal courts with complaints from persons who feel annoyed by some dealing they have had with another which happened to be by way of an interstate telephone call, Congress wisely imposed two very important and very strict conditions which must be proved before an offense under this section is established regarding conversations between people known to each other. First, the phone calls must be "repeated". The court takes this to mean repeated in close enough proximity to one another to rightly be called a single episode, and not separated by periods of months or years. This condition both requires the repeatedness as an element of the legally cognizable charge, and at the same time insures that the courts will not be flooded with complaints growing out of a single unpleasant call with some acquaintance. Second, the repeated calls must be made "solely to harass" and not merely to "annoy, abuse, threaten, or harass" as in the case of an anonymous phone call under § 223(1) (B).[3] Here Congress evidenced common sense in the affairs of men. In many situations, and most especially in romantic and family conflicts,

down over a stinging dissent by Judge Wisdom, however, with which this Court is in complete agreement, and until bound to do otherwise by the decision of a court of direct authority, this Court will follow what it takes to be the clear intent of Congress, rather than interpret the language of this section in a way which renders the conduct of so many persons criminal and raises such grave Constitutional problems relating to the rights of free speech.

3. Congress was fully aware of the difference in the intent standards between § 223(1) (B) and § 223(1) (D). In a letter from Deputy Attorney General Warren Christopher to Rep. Harley O. Staggers, Chairman of the Committee on Commerce dated Feb. 9, 1968 regarding the bill which became 47 U.S.C. 223, Mr. Christopher pointed out the difference and recommended that the intent standard for § 223(1) (D) be made identical to that in § 223(1) (B). Congress in its wisdom rejected this Justice Department recommendation. See 1968 U.S.Code Cong. & Admin.News, p. 1919.

a person may call another repeatedly and the ensuing conversations may be or become more or less unsatisfactory, unpleasant, heated, or vulgar. Up to a point these are the normal risks of human intercourse, and are and should be below the cognizance of the law. This Court does not read this section of law to extend to these situations, no matter how much sympathy it might have for one side or the other in such a conflict, unless some completely unjustifiable motive, such as revenge or cruelty, motivates such repeated contacts by interstate telephone calls between those known to each other. Only then can such calls be properly called "solely to harass".

If this section were drawn or interpreted any more broadly, countless people would be criminalized. The effect of such a law would be to encourage more vengeance than it prevented. And considering the potential burden on the available investigatory staff, the prosecution, and the courts, it is unlikely that more than a tiny and haphazardly random minority would ever be prosecuted. Congress has wisely limited the scope of § 223(1) (D) to the discouragement of certain clear and unjustifiable behavior, and in less clear cases left the world to struggle as before with the problems and aggravations of romantic and family disputes.

■■ With this as background, this Court feels that the Government failed to prove that four of the six counts tried involved repeated phone calls, and that any of the counts involved repeated phone calls "solely to harass". Four of the counts (Count 3, Count 5, Count 7 of the original information and Count 1 of the second information) involved calls which were taken by the answering service of the complaining witness, Mrs. Rex. In each case, defendant would call, be unable to get through the answering service, and call back a few minutes later until he got Mrs. Rex personally. All of the calls taken by the answering service were routine in content, and many were handled by an operator as intermediary. This Court feels that this kind of situation cannot be treated as a situation of repeated telephone calls under § 223(1) (D). The relevant consideration is not how many times Mr. Darsey dialed, or how many times he spoke to an answering service, but how many times he imposed upon Mrs. Rex. In the context of this case, this Court does not consider the calls completed until defendant actually got through to Mrs. Rex.

■ As to whether any of the calls were solely to harass, the evidence established that Mrs. Rex was defendant's former mother-in-law, that defendant was divorced from Mrs. Rex's daughter, who had custody of their son, that Mrs. Rex maintained contact with and gave financial support to her daughter, that defendant had great difficulty in seeing his son or contacting him in any way, that defendant professed to be worried about his son's safety in his former wife's custody, and that generally defendant only called Mrs. Rex when he couldn't reach his son by telephone. The conversations almost inevitably contained inquiry as to the son's whereabouts and well being and were sometimes at least civil. This Court does not intend to recount all the evidence in greater detail, or to describe every claimed and counterclaimed abuse on both sides. Nor does the Court believe that Mr. Darsey's behavior was always prudent, reasonable or above reproach—it was not. Nor is the Court convinced that there was not an element of harassment motivating some of the calls. However, the Court is not convinced that any of the phone calls in question were shown to be made "solely to harass", and has therefore found defendant not guilty on all charges.