Argued and submitted May 10, decision of the Court of Appeals affirmed; order of the Workers' Compensation Board reversed, and case remanded to the Board for reconsideration September 29, reconsideration denied November 29, 1994

In the Matter of the Compensation of
Melvin L. Martin, Claimant.

Melvin L. MARTIN,
*Respondent on Review,*

*v.*

CITY OF ALBANY
and SAIF Corporation,
*Petitioners on Review.*

(WCB 90-20361; CA A73640; SC S40765)

880 P2d 926

Steve Cotton, Special Assistant Attorney General, Salem, argued the cause for petitioners on review. With him on the petition were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Robert Wollheim, of Welch, Bruun, Green & Wollheim, Portland, argued the cause for respondent on review.

DURHAM, J.

**DURHAM, J.**

The issue in this workers' compensation case is whether the Board had authority to hear this claim for medical services arising from a doctor's recommendation that claimant should receive medical treatment[1] in the future. The pertinent statute, ORS 656.327(1)(a), permits an insurer to request a review of medical treatment by the Director of the Department of Consumer and Business Services[2] if the insurer

> "believes that an injured worker is receiving medical treatment that is excessive, inappropriate, ineffectual or in violation of rules regarding the performance of medical services * * *."

The Court of Appeals held that the statute is not ambiguous, that the director's statutory authority to review medical treatment does not apply to requests for future medical treatment and that, for that reason, the Board had authority to decide this case. *Martin v. City of Albany*, 124 Or App 434, 861 P2d 405 (1993), citing *Jefferson v. Sam's Cafe*, 123 Or App 464, 861 P2d 359 (1993)). On review, we affirm the decision of the Court of Appeals.

In 1972, claimant suffered a compensable back injury. He underwent back surgeries in 1984, 1988, and 1989. Dr. Burchiel, a neurosurgeon, saw him on June 7, 1990, and recommended that claimant would be a good candidate for a procedure called spinal cord stimulation, if claimant did well on a psychological screening. A second neurosurgeon, Dr. Collada, saw claimant on August 21, 1990, and made a recommendation similar to Dr. Burchiel's. Dr. Hennings, a psychologist, evaluated claimant and recommended that he was not a good candidate for surgery, but said that there was a possibility that the recommended procedure would be successful.

---

[1] The Workers' Compensation Law, ORS chapter 656, does not specially define "medical treatment." In this opinion, we use "medical treatment" to refer to medical services, including surgery, provided for a compensable injury pursuant to ORS chapter 656.

[2] The Department of Consumer and Business Services was known as the Department of Insurance and Finance (DIF) when the Board decided this case. The name was changed pursuant to Oregon Laws 1993, chapter 744, section 10.

On October 11, 1990, claimant's lawyer wrote to employer, asking about the status of the authorization for the medical treatment. On October 22, 1990, employer requested review of the recommended medical treatment by the director of DIF under ORS 656.327(1)(a). On December 5, 1990, claimant's lawyer wrote to DIF asking about the status of its review of the proposed medical treatment. On December 12, 1990, DIF sent a notice to show cause requesting that employer provide evidence regarding the treatment.

Claimant chose a different course. He requested a hearing under ORS 656.283 before the Hearings Division. By the time of the hearing on January 16, 1991, employer had neither accepted nor formally denied claimant's request to pay for the surgery. DIF had begun to process a medical treatment review, but had not issued an order. The referee concluded that the recommended treatment was "appropriate treatment for Claimant and that it is materially related to his work injury."

On review, the Board held that the referee lacked jurisdiction over issues surrounding the proposed medical procedure, because

> "disputes regarding *proposed* medical services, as well as those regarding current medical services, are within the Director's original jurisdiction pursuant to ORS 656.327." (Emphasis in original.)

According to the Board, because ORS 656.327 provided a procedure for resolving a dispute over proposed medical treatment, insurer's " 'de facto' denial did not raise a matter concerning a claim within the jurisdiction of the Hearings Division." As noted, the Court of Appeals reversed the Board.

Whether the Board and Hearings Division have authority to address a claim for future medical treatment is an issue of statutory construction. We turn to the relevant statutes. ORS 656.283(1) provides:

> "Subject to subsection (2) of this section and ORS 656.319, any party or the director may at any time request a hearing on any question concerning a claim."

Claimant argues that he requested a hearing pursuant to that statute to obtain an order compelling insurer to pay for treatment that his doctors recommended.

Insurer contends that the Board had no authority to hold the requested hearing by operation of two statutes, ORS 656.704(3) and 656.327(1), (2). ORS 656.704(3) provides:

"For the purpose of determining the respective authority of the director and the board to conduct hearings, investigations and other proceedings under this chapter, and for determining the procedure for the conduct and review thereof, *matters concerning a claim under this chapter are those matters in which a worker's right to receive compensation, or the amount thereof, are directly in issue. However, such matters do not include any proceeding for resolving a dispute regarding medical treatment or fees for which a procedure is otherwise provided in this chapter.*" (Emphasis added.)

ORS 656.327(1) and (2) provide:

"(1)(a)  If an injured worker, an insurer or self-insured employer or the director believes that an injured worker is receiving medical treatment that is excessive, inappropriate, ineffectual or in violation of rules regarding the performance of medical services and wishes review of the treatment by the director, the injured worker, insurer of self-insured employer shall so notify the parties and the director.

"(b)  Unless the director issues an order finding that no bona fide medical services dispute exists, the director shall review the matter as provided in this section. Appeal of an order finding that no bona fide medical services dispute exists shall be made directly to the board within 30 days after issuance of the order. The board shall set aside or remand the order only if the board finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding in the order when the record, reviewed as a whole, would permit a reasonable person to make that finding. The decision of the board is not subject to review by any other court or administrative agency.

"(c)  The insurer or self-insured employer shall not deny the claim for medical services nor shall the worker request a hearing on any issue that is subject to the jurisdiction of the director under this section until the director issues an order under subsection (2) of this section.

"(2)  The director shall review medical information and records regarding the treatment. The director may cause an appropriate medical service provider to perform reasonable and appropriate tests, other than invasive tests, upon the

worker and may examine the worker. Notwithstanding ORS 656.325(1), the worker may refuse a test without sanction. Review of the medical treatment shall be completed and the findings of the director shall be submitted to the parties within 30 days of the request for review. The findings of the director regarding the treatment in question shall be prepared in such form and manner and shall contain such information as the director may prescribe. Within 10 days of making the findings, the director shall issue an order based upon the findings. If the worker, insurer, self-insured employer or medical service provider is dissatisfied with that order, the dissatisfied party may request a hearing on the order. If the director issues an order declaring medical treatment to be not compensable, the worker is not obligated to pay for such treatment. Review of the order shall be as provided in ORS 656.283 in accordance with expedited hearing procedures established by the board, except that the order of the director may be modified only if the order is not supported by substantial evidence in the record."

We first address whether ORS 656.327(1) authorizes director review of a recommendation for future medical treatment. If not, then the last sentence of ORS 656.704(3) does not exclude the dispute from the matters concerning a claim for which claimant may request a hearing under ORS 656.283(1).

To discern the legislature's intention, we begin at the first level of analysis with the text and context of the statute in question. The statutory text "is the starting point for interpretation and is the best evidence of the legislature's intent." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). We observe rules of construction "that bear directly on how to read the text," such as

"the statutory enjoinder 'not to insert what has been omitted, or to omit what has been inserted.' ORS 174.010. Others are found in the case law, including, for example, the rule that words of common usage typically should be given their plain, natural and ordinary meaning." *Id.* at 611.

We also consider, at the first level of analysis, the context of the statute in question, "which includes other provisions of the same statute and other related statutes." *Id.* Only if the legislature's intent is not clear, after completion of the first level of analysis, do we proceed to the second level of analysis in which we consider legislative history. *Id.*

■ The legislature used the present verb tense in three places in ORS 656.327(1)(a) to describe the conditions for requesting director review of a medical treatment dispute. The use of a particular verb tense in a statute can be a significant indicator of the legislature's intention. In *Gettman v. SAIF*, 289 Or 609, 614, 616 P2d 473 (1980), the Board had reduced a worker's permanent disability award, because it found that he had a "potential" for retraining. We noted that the statute permitted that result only if the claimant could hold a "suitable occupation," which the statute defined as one that the claimant "is able to perform after rehabilitation." *Id.* at 614. The court said:

> "We conclude that the language of this statute, which speaks in the present tense, precludes cancellation of a permanent total disability award based upon a speculative future change in employment status. In other words, whether this claimant is permanently totally disabled must be decided upon conditions existing at the time of decision, and his award of compensation for permanent total disability can be reduced only upon a specific finding that the claimant presently is able to perform a gainful and suitable occupation." *Id.*

*See also 1000 Friends v. LCDC*, 292 Or 735, 746, 642 P2d 1158 (1982) (the use of the word "threaten" in its present tense in a land use statute indicated a legislative intention to exclude a future tense meaning for the term).

■ As those cases suggest, we do not lightly disregard the legislature's choice of verb tense, because we assume that the legislature's choice is purposeful. In most cases, we best effectuate the legislative intention by giving effect to the plain, natural, and ordinary meaning of the verb tense chosen by the legislature.

Although the legislature's choice of verb tense in ORS 656.327(1)(a) is significant, the statute contains other words, such as "medical treatment," that render the legislature's intention unclear. The term "treatment" is defined as "the action or manner of treating a patient medically or surgically." Webster's Third New International Dictionary 2435 (unabridged 1993). If we apply that definition, the key statutory phrase, "is receiving medical treatment," plausibly could be read to mean that, if a party or the director satisfies

the prerequisites for review, then the director's review authority commences when the doctor commences the act of treating a claimant, medically or surgically, to improve the claimant's condition, and the claimant "is receiving" the doctor's medical or surgical care. Under that construction, a doctor's recommendation to an insurer that a claimant receive medical treatment in the future is not within the director's review authority, because it is not a present application of medical or surgical methods and techniques, the claimant is not yet "receiving" the recommended medical treatment and, because of that fact, the insurer cannot say, as ORS 656.327(1)(a) requires it to say, that it *believes* that the claimant *is receiving* medical treatment that "*is* excessive, inappropriate, ineffectual or in violation of rules." (Emphasis added.) The Court of Appeals has held that that reading is the only plausible construction of the director's authority under ORS 656.327(1)(a). *Jefferson v. Sam's Cafe, supra*, 123 Or App at 466. Although we do not agree that the statute is free of ambiguity, that reading appears to be the most likely reading in view of the legislature's repeated use of the present verb tense in the statute and the ordinary meaning of the term "treatment."

What appears to be the most likely reading of the text of ORS 656.327(1)(a) is not the only plausible reading. The legislature also plausibly could have meant "treatment" to include a medical determination that the claimant should undergo some medical treatment in the future. Under that reading, the director would have authority to review a recommendation for future medical treatment. We conclude that the text does not make it clear that the legislature intended to adopt one of these plausible constructions and reject the other.

We next examine the context of ORS 656.327(1)(a) to determine whether the legislature made its intention clear through another subsection of that statute or another related statute. ORS 656.327(2), quoted above, requires the director to review the medical treatment, to make findings regarding the treatment, and to issue an order based on the findings. Any party, including the medical service provider, may request a hearing on the order. The order may declare the medical treatment "to be not compensable" and, in that case,

the claimant is not obligated to pay for the treatment. The order is reviewable by the Board under ORS 656.283.

Another part of the context of ORS 656.327(1)(a) is ORS 656.254(3)(a).[3] ORS 656.327(2) and 656.254(3)(a) support what we have described as the meaning of ORS 656.327(1)(a) that the legislature most probably intended. ORS 656.254(3)(a) authorizes the director, in the exercise of authority to review medical treatment pursuant to ORS 656.327(2), to find a health care practitioner

> *"to have failed to comply with rules* \* \* \* *regarding the performance of medical services for injured workers or to have provided medical treatment that is excessive, inappropriate or ineffectual* \* \* \*." (Emphasis added.)

If the director makes one of those findings after reviewing medical treatment, ORS 656.254(3)(a) authorizes the director to "impose a sanction including forfeiture of fees and a

---

[3] ORS 656.254(3), which was added by Oregon Laws 1987, chapter 884, section 27, provides:

"In accordance with the provisions of ORS 183.310 to 183.550, if the director finds that a health care practitioner has:

"(a) Been found, pursuant to ORS 656.327, to have failed to comply with rules adopted pursuant to this chapter regarding the performance of medical services for injured workers or to have provided medical treatment that is excessive, inappropriate or ineffectual, the director may impose a sanction that includes forfeiture of fees and a penalty not to exceed $1,000 for each occurrence. If the failure to comply or perform is repeated and willful, the director may declare the health care practitioner ineligible for reimbursement for treating workers' compensation claimants for a period not to exceed three years.

"(b) Had the health care practitioner's license revoked or suspended by the practitioner's professional licensing board for a violation of that profession's ethical standards, the director may declare the health care practitioner ineligible for reimbursement for treating workers' compensation claimants for a period not to exceed three years or the period the practitioner's license is suspended or revoked, whichever period is the longer.

"(c) Has engaged in any course of conduct demonstrated to be dangerous to the health or safety of a workers' compensation claimant, the director may impose a sanction that includes forfeiture of fees and a penalty not to exceed $1,000 for each occurrence. If the conduct is repeated and willful, the director may declare the health care practitioner ineligible for reimbursement for treating workers' compensation claimants for a period not to exceed three years.

"(d) Has failed after January 1, 1989, to participate in a continuing education program that meets the requirements of ORS 656.329, the director may impose a sanction that includes forfeiture of fees and may declare the health care practitioner ineligible for reimbursement for treating workers' compensation claimants until the health care practitioner participates in the continuing education program."

penalty not to exceed $1,000 for each occurrence." The legislature used the past perfect verb tense in ORS 656.254(3)(a) to describe the health care practitioner's conduct that the director may sanction. That suggests that director review under ORS 656.327 concerns medical treatment that the health care practitioner already has administered, at least to the point that the challenged treatment may warrant a sanction. Nothing in the text of ORS 656.254(3)(a) suggests that the legislature intended to authorize the director to sanction a doctor merely for recommending a future medical treatment.

Under our analysis of the context of ORS 656.327-(1)(a), we think it unlikely that the legislature intended to apply the procedures for medical treatment review and sanctions to a doctor's recommendation for a future medical treatment that the doctor has not yet provided and the injured worker has not yet received. We cannot say, however, that the context makes the legislative intention clear. Accordingly, we turn to legislative history. See Weidner v. OSP, 319 Or 295, 301, 877 P2d 62 (1994) (illustrating principle that a review of legislative history is necessary under the PGE v. Bureau of Labor and Industries template when the court can discern one most likely statutory meaning from the text and context, but cannot rule out other plausible meanings).

The director's authority to review medical treatment under ORS 656.327(1)(a) was created in 1987 as a part of House Bill 2900. Or Laws 1987, ch 884, § 29. In that bill, the legislature also enacted ORS 656.254(3) to authorize the director to impose sanctions against health care practitioners for providing inappropriate medical treatment, suffering a license revocation or suspension for violation of professional ethical standards, engaging in a course of conduct that is dangerous to a claimant, or failing to meet continuing education requirements. Or Laws 1987, ch 884, § 27. For relevant statutory text, see note 3. The text of those changes indicates that the legislature desired to expand the director's authority to punish health care practitioners for providing medical treatment that is unlawful, dangerous, or in violation of professional standards in the ways described in ORS 656.327(1)(a) and ORS 656.254(3)(a)-(d), and to protect

claimants and insurers from having to pay for such medical treatment.

The legislative history sheds light on the legislature's intention in adopting House Bill 2900. On June 10, 1987, the Senate Committee on Labor discussed a version of the bill known as HB 2900A-9, according to the committee's minutes. At the time, the bill contained the following passage in the section that now comprises ORS 656.327(2):

> "Within 10 working days of receiving the findings of the medical panel, the director shall issue an order based upon the findings of the medical panel. *If the worker, insurer or self-insured employer is dissatisfied with that order, the dissatisfied party may request a hearing on the order.*" (Emphasis added.)

The committee's minutes indicate that Senator Bill Bradbury asked Dr. Frank Russell of the Workers' Compensation Department whether the medical service provider could appeal the director's ruling. The committee's minutes show that the following discussion occurred:

> "DR. RUSSELL said that is consistent with current law. If treatment is denied by an insurer, the doctor can ask for a hearing.
>
> "SENATOR BRADBURY stated we are not talking only about denying treatment. We are talking about coming up with a finding that someone has done something that is improper and a part of the order might be a fine of $1,000. He asked if the doctor could appeal that.
>
> "MOTION: CHAIRMAN HILL moved that on page 42, in line 20, insert 'or provider of medical treatment' or similar language to allow an appeal by the doctor." Minutes, Senate Committee on Labor, HB 2900A-9, June 10, 1987, p 20.

The committee subsequently adopted the chairman's motion and added the phrase "medical service provider" to the seventh sentence of what later became ORS 656.327(2).

At the same meeting, a discussion occurred about whether the medical service provider's request for a hearing about a finding of inappropriate treatment should proceed under the Administrative Procedures Act (APA), ORS 183.310 to 183.550, or instead should be submitted to the director. According to the committee's minutes, Dr. Russell said in response that

"under this procedure all the director's order is going to say is stop this treatment or don't pay for this treatment any more. If the director wanted to go after the doctor, he would go after him under the APA in a separate proceeding. He added the sole purpose of this section is to stop inappropriate treatment." Minutes, Senate Committee on Labor, HB 2900A-9, June 10, 1987, p 21.

It appears from the legislative history that the committee added phrases to the bill to permit a medical service provider to request a hearing, because it believed that an adverse finding by the director would indicate, as Senator Bradbury stated, that the provider "has done something that is improper," and the finding might result in a fine of $1,000 against the provider. Senator Bradbury's statement can be read quite easily to refer to a medical service provider's actual commencement and performance of inappropriate medical treatment techniques. Such treatment harms the worker's interest in sound medical treatment and the insurer's interest in paying for treatment only if it is medically appropriate. In contrast, the potential harm to those interests from a mere recommendation for future medical treatment is a matter of speculation because, at that stage, the insurer is not paying for and the worker has not received the recommended medical service.

Dr. Russell's description of the content of the director's order supports the same inference. He indicated that a director's order would tell the doctor to "*stop* this treatment" or would tell, we assume, the insurer that it should not "pay for this treatment *any more*." (Emphasis added.) Those comments, and his final statement that the section was intended to "stop inappropriate treatment," suggest that the bill was meant to authorize review of treatment that at least is at the stage of actual application or delivery of medical treatment techniques. Given Dr. Russell's description, it would be illogical to conceive of director review as a process that would lead to an order telling the insurer not to "pay for this treatment any more" when the service provider has only recommended, and has not actually commenced performing, the medical service.

Insurer relies on statements made by Ed Redman on May 3, 1990, during a special session of the legislature that

adopted several amendments to the Workers' Compensation Law. Or Laws 1990 (Spec Sess), ch 2. Mr. Redman was a member of the Governor's Workers' Compensation Labor Management Advisory Committee that developed the amendments adopted at the special session. Mr. Redman made the following statements to the Interim Special Committee on Workers' Compensation about ORS 656.327(1)(a):

> "Under this section the director will have authority in decisions in regards to medical issues. So if there's an issue of excessive, inappropriate or ineffectual medical treatment, the appeal would go to the medical director. And the medical director's staff or panel that he wishes to have and his staff would make the decision. The intent with this section is to move from the litigation process, with appeals and referees, the question of medical treatment being appropriate, unnecessary or whatever. And decisions then would be made by, again, physicians rather than referees according to the appropriateness of that treatment. An example may be the physician recommends that this worker buy a bicycle for physical therapy and the insurance carrier says no we won't buy the bicycle. Then that would be appealed to the medical director and the medical director's staff under DIF would make the decision whether that was appropriate or not appropriate." Tape Recording, Minutes, Interim Special Committee on Workers' Compensation, SB 1197, statement of Ed Redmond, May 3, 1990, Tape 3, Side A at 65.

According to insurer, Mr. Redman's example about a doctor recommending a bicycle purchase shows that ORS 656.327-(1)(a) extends director review authority to recommended medical treatment. It also argues that ORS 656.704(3) was amended in 1990 to give the director authority over disputes regarding medical treatment.

Mr. Redman's testimony regarding the meaning of ORS 656.327(1)(a) and 656.704(3) does not assist us in determining the issue posed in this case. The 1990 amendment to ORS 656.704(3) added the following italicized clause to the last sentence of the section:

> "However, such matters do not include any proceeding for resolving *a dispute regarding medical treatment or fees for which a procedure is otherwise provided in this chapter*." Or Laws 1990, ch 2, § 37 (emphasis added).

That clause does not state what constitutes a dispute regarding medical treatment; instead, the clause requires us to look elsewhere in ORS chapter 656 for that information.

The amendments to ORS 656.327 enacted in 1990 made no change in the scope of medical treatment disputes to which the statute applies. Instead, the legislature altered several of the procedures governing medical treatment review. Or Laws 1990 (Spec Sess), ch 2, § 26. None of those changes affected the wording in ORS 656.327(1)(a) adopted in 1987, which we have discussed above, that describes the types of disputes subject to review. Mr. Redman's comments in 1990 shed no light on the legislature's purpose in adopting *in 1987* the language in ORS 656.327(1) that identifies the medical treatment disputes subject to review under that statute.

■ ■ The legislative history supports what we have described as the most plausible reading of the text and context of ORS 656.327(1). Under our analysis, assuming that the parties and the director comply with any statutory prerequisites to review, the director's review authority under ORS 656.327(1) commences when the medical service provider commences delivery of actual medical treatment to the worker, and the worker is receiving the treatment. Because insurer sought director review of a recommendation for future treatment, the director was not authorized to engage in review under ORS 656.327(1). Accordingly, the matters that ORS 656.704(3) excludes from the Board's authority do not include a request to authorize payment for future medical treatment. For those reasons, the Board was authorized to consider claimant's request for a hearing regarding proposed medical treatment and erred in concluding that it had no jurisdiction over it.

The decision of the Court of Appeals is affirmed. The order of the Workers' Compensation Board is reversed, and the case is remanded to the Board for reconsideration.