Argued and submitted June 25, reversed and remanded with instructions
November 5, 1997, petition for review denied February 17, 1998 (326 Or 465)

# STATE OF OREGON,
*Respondent,*

*v.*

# MARLON JOSE LOPEZ,
*Appellant.*

## (9521680; CA A93892)

949 P2d 1237

Walter J. Ledesma, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Pilar C. French, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

## WARREN, P. J.

■ Defendant appeals his conviction for telephonic harassment. ORS 166.090. He assigns error to the trial court's denial of his motion to acquit. ORS 166.090(1)(b) requires that a victim of telephonic harassment "answer" the harassing telephone call in order for there to be a completed offense. Defendant argues that the state failed to prove that the victim answered the telephone. We agree and reverse and remand for resentencing.

The facts are not in dispute. Defendant was charged with harassing the victim on or about November 14, 1995, by causing her telephone to ring and causing her to answer it, knowing that he had been forbidden from doing so by a person exercising lawful authority over the receiving telephone. During this time, the victim never physically answered the telephone; she either declined to answer after recognizing defendant's number on her caller identification box or her husband answered the telephone for her. ORS 166.090 provides, in part:

"(1)   A telephone caller commits the crime of telephonic harassment if the caller intentionally harasses or annoys another person:

"* * * * *

"(b)   By causing such other person's telephone to ring *and causing such other person to answer it,* knowing that the caller has been forbidden from so doing by a person exercising lawful authority over the receiving telephone." (Emphasis supplied.)

■ In ruling on the sufficiency of the evidence in a criminal case, the question is whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, viewing the evidence in the light most favorable to the state. *State v. Cervantes,* 319 Or 121, 125, 873 P2d 316 (1994). Each element of a crime must be proven beyond a reasonable doubt. *State v. Rainey,* 298 Or 459, 465, 693 P2d 635 (1985). An essential element of the crime of telephonic harassment is that the victim answer the telephone.

The state argues that the term "answer" is ambiguous and should be interpreted consistently with the legislative intent. The state suggests that the requirement of answering was inserted by the legislature to ensure that some harm occurred. Here, the state contends that the harm occurred whether or not the victim actually picked up the receiver. In other words, the state asserts that any response to a call, including through an answering machine, viewing caller identification, or even someone answering for the alleged victim, that results in a harm, should be deemed "answering" for purposes of the statute.

Conversely, defendant argues that the term "answer" is clear on its face and any resort to legislative intent is unnecessary and inappropriate. We agree. If the intent of the legislature is clear from the text and context of the statute, we do not resort to further statutory construction. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). Words of common usage should be given their "plain, natural and ordinary meaning." *Id.* at 611.

The common understanding of the phrase "answering the telephone" is the physical process of taking the receiver off the hook, placing it to one's ear and saying, "Hello."

We decline to adopt the "agency theory" promoted by the state. If the victim is not subjected to the message or voice of the harasser, regardless of whether a harm occurs, the victim cannot be considered to have answered the telephone. Thus, as the facts indicate here, the victim's husband answered the telephone for her during the time charged in the crime or she recognized the number on her caller identification box and refused to answer. The trial court erred in concluding that the jury could find that the victim answered the telephone as required by ORS 166.090(1)(b).

The curiosity of our decision is that in cases such as this the victim must commit the act that results in the completed crime. Here, the victim determined from her caller identification box that defendant was calling. By declining to answer she prevented defendant from completing the crime. On the other hand, had she decided to answer and subject

herself to the unwanted and harassing telephone call, defendant would have been guilty of harassment. That curiosity, however, is an issue for the legislature to address.

■　　The state argues in the alternative that, if there is insufficient evidence to convict defendant of telephonic harassment, the appropriate remedy is a remand for entry of a judgment of attempted telephonic harassment. We agree. "A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step towards commission of the crime." ORS 161.405. Attempted telephonic harassment is necessarily a lesser included offense of telephonic harassment. Because the jury convicted defendant of telephonic harassment, it necessarily determined that defendant had the requisite intent. His attempt failed only because the victim refused to answer. Thus, under Article VII (Amended), section 3,[1] of the Oregon Constitution, we remand for entry of a judgment of attempted telephone harassment. *See State v. Lee*, 105 Or App 329, 333, 804 P2d 1208, *rev den* 311 Or 427 (1991) (holding that a jury conviction for solicitation to commit robbery necessarily included the requisite intent and elements for a conviction of attempted solicitation).

Reversed and remanded for entry of conviction for attempted telephonic harassment and resentencing.

---

[1] Article VII (Amended), section 3, provides, in part:

"[I]f, in any respect, the judgment appealed from should be changed, and the [reviewing] court shall be of opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases on appeal to [a reviewing] court."