Argued and submitted February 26; resubmitted En Banc June 10, affirmed
September 30, 1998

# STATE OF OREGON,
*Respondent,*

*v.*

# JON EARL NORGARD,
*Appellant.*

(96-08-45905; CA A95646)

967 P2d 499

Kimi Nam, Deputy Public Defender, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

RIGGS, J. pro tempore.

Haselton, J., concurring.

Wollheim, J., dissenting.

**RIGGS, J. pro tempore.**

Defendant appeals from his conviction for telephonic harassment, ORS 166.090, assigning error to the trial court's denial of his motion for judgment of acquittal. We affirm.

The facts are not in dispute. Although the victim repeatedly had forbidden defendant from telephoning her, defendant persisted in doing so and in writing her letters. The incident that led to this prosecution occurred months after the victim first told defendant to stop calling her. Defendant telephoned the victim's home and left a message on her answering machine, stating that he had posted her photograph on the internet and that the photograph had received numerous "hits." The victim listened to the message in its entirety and was highly upset by it. Defendant was charged with the crime of telephonic harassment under ORS 166.090(1)(b).[1]

The question in this appeal is whether the state has established that defendant caused the victim to "answer" her telephone within the meaning of the statute. Defendant argues that the state has failed to prove that the victim answered the telephone, because defendant's call was recorded by the victim's answering machine, and the victim heard the harassing message through that machine after defendant had hung up. The state responds that the victim answered defendant's telephone call despite her use of an answering machine.

We agree with the state that defendant caused the victim to answer the harassing call. The victim attached a machine to her telephone that completed the connection between her telephone and defendant's, played a recording of her voice to defendant, amplified defendant's voice into the victim's house and recorded any message defendant left.

---

[1] ORS 166.090(1)(b) provides:

"(1) A telephone caller commits the crime of telephonic harassment if the caller intentionally harasses or annoys another person:

"* * * * *

"(b) By causing such other person's telephone to ring and causing such other person to answer it, knowing that the caller has been forbidden from so doing by a person exercising lawful authority over the receiving telephone."

When the victim pushed a button on the machine, she heard the message played back. Replaying a message recorded on an answering machine may be a delayed answer, but it is an answer nonetheless.The fact that the victim was not holding her telephone to her ear at the moment that defendant was speaking does not lessen the harm she suffered and should not be the deciding factor in this case. Indeed, it is likely that the people the legislature most intended to benefit when it enacted ORS 166.090(1)(b)—victims of chronic, continuous telephone harassment—are also the people most likely to screen their calls through an answering machine or similar device. Defendant's proposed reading puts those victims beyond the reach of this statute, unless they are willing to withstand direct telephone connections with their harassers.

Our holding is consistent with our only previous case addressing the meaning of "answer" under ORS 166.090-(1)(b). In *State v. Lopez*, 151 Or App 138, 949 P2d 1237 (1997), *rev den* 326 Or 465 (1998), the victim, after recognizing the defendant's telephone number on her caller identification box, either let the telephone ring until the defendant hung up or had her husband answer the telephone for her. In reasoning that the state had failed to establish that the defendant had caused the victim to answer the telephone, we concluded, after discussing the meaning of "answer" under the interpretive framework of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993):

> "We decline to adopt the 'agency theory' promoted by the state. *If the victim is not subjected to the message or voice of the harasser, regardless of whether a harm occurs, the victim cannot be considered to have answered the telephone.* Thus, as the facts indicate here, the victim's husband answered the telephone for her during the time charged in the crime or she recognized the number on her caller identification box and refused to answer. The trial court erred in concluding that the jury could find that the victim answered the telephone as required by ORS 166.090(1)(b)." *Lopez*, 151 Or App at 141 (emphasis added).

Central to our holding in *Lopez* was the fact that the victim was "not subjected to the message or voice of the harasser." *Id.* Here, by contrast, the connection was completed, defendant projected his voice and unwanted message

into the victim's home, and the victim was subjected to that voice and was harmed by it. *Lopez* stands for the proposition that a victim must be subjected to a harasser's voice and message to have "answered" a harassing call under ORS 166.090(1)(b). Because that occurred in this case, *Lopez* supports our holding that the victim answered defendant's harassing telephone call.

Defendant's proposed reading of the statute would require us to conclude that, where defendant did the act proscribed by ORS 166.090(1)(b), and the victim suffered the harm that the statute was intended to address, no prosecution under the statute is possible. We are unwilling to read the statute to produce that result.

Affirmed.

**HASELTON, J.,** concurring.

On occasion, this court, like all courts, says more than it must—and, sometimes, more than it should. *State v. Lopez* was such a case.

In *Lopez*, as the dissent emphasizes, we said:

> "Words of common usage should be given their 'plain, natural and ordinary meaning.'
>
> "The common understanding of the phrase 'answering the telephone' is the physical process of taking the receiver off the hook, placing it to one's ear and saying, 'Hello.' " 151 Or App at 141.

That language cannot be reconciled with the result we reach in this case.

The majority ignores that inconvenient language. Instead, what is, in fact, contrary is deemed "consistent." 156 Or App at 193. With respect, such "pay no attention to that man behind the curtain" cleverness does not suit us. We should, instead, candidly acknowledge our mistakes—and then move on.

*Lopez's* construction of "answer" in ORS 166.090-(1)(b) was unnecessarily overbroad, ill-advised, and erroneous. With that qualification, I concur in the balance of the majority opinion.

**WOLLHEIM, J.,** dissenting.

ORS 166.090 provides, in part:

"(1)    A telephone caller commits the crime of telephonic harassment if the caller intentionally harasses or annoys another person:

"* * * * *

"(b)    By causing such other person's telephone to ring and *causing such other person to answer it,* knowing that the caller has been forbidden from so doing by a person exercising lawful authority over the receiving telephone." (Emphasis added.)

The majority holds that an "answer" by a machine satisfies the statutory requirement that the caller cause the victim to answer the telephone. I do not agree that the plain words of the statute allow such a result and, thus, I respectfully dissent.

The statutory language provides that a person commits the crime of telephonic harassment by "causing such other person's telephone to ring and *causing such other person to answer it."* (Emphasis added.) We held in *State v. Lopez,* 151 Or App 138, 141, 949 P2d 1237 (1997), that the phrase "causing such other person to answer it" is unambiguous and means that the victim must "tak[e] the receiver off the hook * * * and say[ ] hello." In that case, the victim did not physically answer the telephone. She either declined to answer it, after recognizing the defendant's telephone number on her caller identification box, or had her husband answer the telephone for her. We said that an essential element of the crime of telephonic harassment is that the victim answer the telephone. *Id.* at 140. In reasoning that the state had failed to establish that the defendant had caused the victim to answer the telephone, we said:

"The state argues that the term 'answer' is ambiguous and should be interpreted consistently with the legislative intent. The state suggests that the requirement of answering was inserted by the legislature to ensure that some harm occurred. Here, the state contends that the harm occurred whether or not the victim actually picked up the receiver. In other words, the state asserts that any response

to a call, including through an answering machine, viewing caller identification, or even someone answering for the alleged victim, that results in a harm, should be deemed 'answering' for purposes of the statute.

"Conversely, defendant argues that the term 'answer' is clear on its face and any resort to the legislative intent is unnecessary and inappropriate. We agree. If the intent of the legislature is clear from the text and context of the statute, we do not resort to further statutory construction. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). Words of common usage should be given their 'plain, natural and ordinary meaning.' *Id.* at 611.

"The common understanding of the phrase 'answering the telephone' is the physical process of taking the receiver off the hook, placing it to one's ear and saying, 'Hello.'

"We decline to adopt the 'agency theory' promoted by the state. If the victim is not subjected to the message or voice of the harasser, regardless of whether a harm occurs, the victim cannot be considered to have answered the telephone. Thus, as the facts indicate here, the victim's husband answered the telephone for her during the time charged in the crime or she recognized the number on her caller identification box and refused to answer. The trial court erred in concluding that the jury could find that the victim answered the telephone as required by ORS 166.090(1)(b)." 151 Or App at 141.

The gist of our holding in *Lopez* is that a telephone is not "answered" by the victim for purposes of ORS 166.090(1)(b) when the victim has someone else answer the telephone or refuses to answer after recognizing a number on a caller identification box.[1]

In *Martin v. City of Albany*, 320 Or 175, 181, 880 P2d 926 (1994), the Supreme Court held that the legislature's choice of verb tense can be a significant indicator of the legislature's intention. Similarly here, the choice of the parallel clauses, "causing * * * to ring," and "causing * * * to answer," in the quoted portion of the statute implies sequential *and*

---

[1] Compare ORS 166.090(1)(a), which requires that the caller cause "the telephone of the other person to ring, such caller having no communicative purpose," but contains no requirement of an answer. *See State v. Allison*, 325 Or 585, 941 P2d 1017 (1997).

*uninterrupted* conduct. The telephone of the "other person" is caused to ring, and the telephone is caused to be answered by such other person. There is no place in that sequence for an answering machine. I conclude that listening to a message that has been recorded on an answering machine is not "answering the telephone" within the meaning of the statute.

The state makes several arguments concerning the nature of the communication, if any, required to complete the crime of telephonic harassment. In *Lopez*, we said in *dictum* that a victim cannot be considered to have answered the telephone if the victim "is not subjected to the message or voice of the harasser." 151 Or App at 141. The state contends that the crime of telephonic harassment is not dependent on any communication or verbalization by the harasser, that it is completed when the harasser dials the victim's number and the telephone is answered. So, for example, in an appropriate circumstance, if the caller dials, the victim answers, and the victim immediately hangs up, that can constitute the completed crime of telephonic harassment. *See* ORS 166.090-(1)(a). Those points are interesting, but beside the point. Under ORS 166.090(1)(b), the telephone must be answered. The majority is concerned that interpreting "answer" to exclude answering machines is contrary to modern methods of telephone communications. However, answering machines were not new technology at the time ORS 166.090 was enacted. If the legislature had wanted to include them as part of the telephone or as a method of answering, it could have done so. For now, however, ORS 166.090(1)(b) requires a traditional "answer" of the telephone.

As in *Lopez*, I conclude that although defendant's conduct cannot constitute the crime of telephonic harassment, his conduct does constitute the lesser-included offense of attempted telephonic harassment. *Lopez*, 151 Or App at 142. Accordingly, I would reverse the conviction for telephonic harassment and remand for entry of a conviction for the lesser-included offense.