ALTENBERND, CHRIS W., Associate Judge.
Jack F. Durie, Jr., appeals the trial court’s order revoking his probation for allegedly violating condition (5) of the order placing him on probation.[1] Condition (5) required Mr. Durie to live and remain at liberty without violating any law. The trial court revoked Mr. Durie’s order of probation because he made harassing telephone calls to an assistant attorney general, allegedly in violation of section 365.16(1), Florida Statutes (2001). We conclude that the State did not present evidence establishing a violation of this statute, and accordingly we reverse the order on appeal.
Mr. Durie was an attorney for many years. In 1992, he represented two clients, Mr. Kee and Mr. Solomon, both of who had been seriously injured in a bar fight. Durie v. State, 751 So.2d 685, 687 (Fla. 5th DCA 2000). The bar had only $100,000 in liability insurance coverage, and the claims of Mr. Kee and Mr. Solomon were settled for that amount. Id. Medicaid covered Mr. Kee’s medical expenses and filed a $40,000 lien against any recovery Mr. Kee might receive from a liable third party. Id. Medicaid maintained that the lien must be repaid in full before any disbursement to Mr. Kee or to other creditors. Id.; see § 409.910(1), Fla. Stat. (1992). Mr. Durie notified Medicaid that Mr. Kee would be receiving $500 of the $100,000 in insurance proceeds. Durie, 751 So.2d at 687. As a result of this representation, Medicaid signed a release of its rights to the settlement funds. Id. at 690. The subsequent formal agreement between Mr. Durie’s clients, however, split the settlement with $20,000 for *173 Mr. Kee and $80,000 for Mr. Solomon. Id. at 688.
The State charged Mr. Durie with second-degree grand theft of Medicaid funds. Id. at 687, 690-91; see §§ 812.014(1), (2)(b); 409.910(17), Fla. Stat. (1992). Although there was evidence to the contrary, the jury found that Mr. Durie devised a false settlement to divert funds from Medicaid to Mr. Kee. Durie, 751 So.2d at 690 (Sharp, J., concurring). There is no indication Mr. Durie profited from these events, but the jury concluded that his clients did. The jury convicted Mr. Durie of second-degree grand theft and sentenced him on January 8, 1999, to sixty days’ county jail followed by ten years’ probation. The Fifth District affirmed. Durie, 751 So.2d 685.
At the outset of this opinion, it must be explained that Mr. Durie has never believed that his participation in the settlement of his clients’ cases constituted a crime. It is beyond dispute that he has never accepted the legitimacy of his judgment and sentence. He has suffered considerable emotional difficulties since his conviction. During the pendency of this appeal, he was involuntarily committed to a mental health facility and he remains so committed at this time. The commitment has considerably slowed our review of this case and required that we obtain the services of the public defender in this matter.
Mr. Durie has filed various and sundry legal documents with this court at least once a week for more than two years. There is no question that he wishes us to revisit his underlying conviction and to consider his claims of actual innocence. We have no legal authority to do so. This appeal, thus, is limited to the issues surrounding the revocation of his probation.
Concerning the revocation, the relevant facts commence with Mr. Durie’s filing of a motion for postconviction relief from his conviction for grand theft. The trial court denied the motion, and Mr. Durie appealed the denial. See Durie v. State, 799 So.2d 1081 (Fla. 5th DCA 2001). During the pendency of that appeal, Mr. Durie was represented by counsel and Assistant Attorney General Angela McCravy represented the State. While the appeal was pending, Mr. Durie personally called Ms. McCravy at her office. Her secretary told Mr. Durie that Ms. McCravy could not accept the call because he was represented by counsel and that Ms. McCravy could only communicate with him through counsel.
Mr. Durie subsequently left three successive five-minute messages on Wednesday, August 29, 2001, at 1:43 p.m., 1:49 p.m., and 2:08 p.m., on Ms. McCravy’s voice mail. From the transcripts of these calls, it is apparent that Mr. Durie called three times, at least in part, because the automatic voice mail system disconnected the phone call after several minutes of recording. The messages consisted of legal arguments professing his innocence, punctuated by unflattering words maligning Ms. McCravy’s ethics and legal work. Mr. Durie stated he intended to file a Florida Bar complaint and threatened that this case would come back to haunt Ms. McCravy for the rest of her life. Ms. McCravy listened to the voice mail messages and reported them to the police. Although Mr. Durie was never prosecuted, an affidavit was filed charging him with violating his probation by committing the offense of making harassing telephone calls pursuant to section 365.16(1).[2] The *174 trial court found him guilty and revoked his probation. Mr. Durie appeals that order in this proceeding.
I. THE HARASSING TELEPHONE CALL STATUTE
Florida’s harassing telephone call statute, section 365.16, provides:
(1) Whoever:
(a) Makes a telephone call to a location at which the person receiving the call has a reasonable expectation of privacy; during such call makes any comment, request, suggestion, or proposal which is obscene, lewd, lascivious, filthy, vulgar, or indecent; and by such call or such language intends to offend, annoy, abuse, threaten, or harass any person at the called number;
(b) Makes a telephone call, whether or not' conversation ensues, without disclosing his or her identity and with intent to annoy, abuse, threaten, or harass any person at the called number;
(c) Makes or causes the telephone of another repeatedly or continuously to ring, with intent to harass any person at the called number; or
(d) Makes repeated telephone calls, during which conversation ensues, solely to harass any person at the called number,
is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.
In this case, subsection (a) does not apply because the location to which Mr. Durie made the calls, a voice recorder at a public government office, is not a location where a government employee would have an expectation of privacy in this context. Moreover Mr. Durie’s recorded statements, although threatening and highly discourteous, were not obscene, lewd, lascivious, filthy, vulgar, or indecent. Subsections (b) and (c) do not apply because Mr. Durie disclosed his identity and left messages rather than just letting the telephone ring.
For subsection (d) to apply, each of three elements must .have been shown: (1) that Mr. Durie’s three consecutive voice mail messages constituted “repeated telephone calls,” (2) that a voice mail message is “conversation,” and (3) that Mr. Durie’s intent in leaving the messages was “solely to harass.” We have considerable doubt whether the three successive telephone calls were “repeated,” given that the voice mail system disconnected the call,[3] and we are uncertain whether a voice message is a conversation.[4] However, we do not reach *175 these issues because we conclude the trial court did not receive competent, substantial evidence that supported a determination that Mr. Durie’s intent was solely to harass.
II. “SOLELY TO HARASS”
The trial court’s error in this ruling centers on the statutory requirement that Mr. Durie’s intent in leaving the voice mail messages be “solely” to harass. As discussed hereafter, this requirement is important to assure the statute’s constitutionality in light of the First Amendment. There is little question that Mr. Durie knew that these recordings would upset and threaten Ms. McCravy, but they contain extensive legal and rational discussion in which he is trying to explain his view of the entire matter.
The language of section 365.16(1) is thus critical to our analysis. The inapplicable subsections, (a), (b), and (c), deal with obscene, anonymous, or hangup calls and require only a showing of intent to harass. Subsection (d), however, which deals with “repeated calls during which conversation ensues,” requires proof that the defendant made the calls “solely to harass.” The best explanation of the difference is found in United States v. Darsey, 342 F.Supp. 311 (E.D.Pa.1972), relating to the nearly identical federal statute:
[T]he repeated calls must be made “solely to harass” and not merely to “annoy, abuse, threaten, or harass” as in the case of an anonymous phone call.... In many situations, and most especially in romantic and family conflicts, a person may call another repeatedly and the ensuing conversation may be or become more or less unsatisfactory, unpleasant, heated, or vulgar. Up to a point these are the normal risks of human intercourse, and are and should be below the cognizance of the law.
Id. at 311; see also Mark F. Lewis, Ask Not for Whom the Bell Tolls — Ask Why: A Look at the Harassing Telephone Call Statutes, 72 Fla. B.J. 60, 63 (1998).
“Solely” or “only” is “equivalent of the phrase ‘and 'nothing else.’ ” Moore v. Stevens, 90 Fla. 879, 106 So. 901, 904 (1925). The word ‘“[s]olely’ is synonymous with ... ‘exclusively,’ ‘entirely,’ and ‘wholly.’ It means ‘exclusively for,’ ... ‘to the exclusion of all else.’ It ‘leaves no leeway.’” State v. Patterson, 534 S.W.2d 847, 851 (Mo.Ct.App.1976). Prohibition of calls with the sole intent to harass “is aimed at calls made with no legitimate purpose whatsoever,” where “the First Amendment simply does not apply ... [bjecause there is no intent to communicate ideas between persons.” M. Sean Royall, Constitutionally Regulating Telephone Harassment: An Exercise in Statutory , Precision, 56 U. Chi. L.Rev. 1403, 1425 (1989); see also Gilbreath v. State, 650 So.2d 10, 12 (Fla.1995) (“Phone calls made with the intent to communicate are not prohibited.”). The court in Patterson, 534 S.W.2d at 851, in construing a statutory provision nearly identical to the provision here, stated, “Had the [legislature] desired to dilute the statute to make it a crime to institute repeated calls with other intents mixed with harassment, it would have been a simple matter for it to have said so or to have deleted the word ‘solely.’ ” The same is true here regarding section 365.16.
Florida case law on section 365.16(l)(d) is nonexistent. Other jurisdictions with similar provisions have addressed the meaning of “solely to harass.” In Corn- *176 monwealth v. Strahan, 30 Mass.App.Ct. 947, 570 N.E.2d 1041, 1043 (1991), the court held the State failed to show the defendant’s eleven calls within a seven-minute period were made solely to harass because the evidence did not prove the calls were not motivated, at least in part, by a desire to reestablish a relationship with his girlfriend:
[Notwithstanding that the calls may have had harassing effect, ... nothing in the evidence furnished a reasonable basis .for concluding that the defendant was not motivated at least in part by a desire to reestablish a relationship with the woman. While the evidence admits of a finding that a desire to harass may have been part of the defendant’s objective in calling the woman eleven times in seven minutes, it does not support the conclusion that such was his sole purpose.
In Darsey, 342 F.Supp. 311, the defendant repeatedly made sometimes abusive calls to his former mother-in-law and was tried under federal law for making harassing calls. The federal law, like the Florida law here, requires proof that the calls have been made “solely to harass.” Id. at 313. The Darsey court, in finding the defendant not guilty, remarked that the calls “almost inevitably contained inquiry as to [his] son’s whereabouts and well being and were sometimes at least civil.” Id. Although the defendant’s behavior was not always “prudent, reasonable, or above reproach,” and an element of harassment motivated the calls, the court was “not convinced that any of the phone calls in question were shown to be made ‘solely to harass.’ ” Id.
Similarly in People v. Zullo, 170 Misc.2d 200, 650 N.Y.S.2d 926 (N.Y.Dist.Ct.1996), the court dismissed aggravated harassment charges against Zullo for leaving her ex-husband a voice mail message calling him obscene names for paying less than required child support. It found the communication “was motivated by her legitimate concern regarding the obligation of the complainant to fulfill his Court ordered responsibilities.” Id. at 928. The Zullo court held, “The mere fact the defendant in anger or frustration uses colorful language in registering her displeasure with actions of the complainant does not render the communication criminal within the ambit of the Penal Law.” Id.
In People v. Jones, 334 Ill.App.3d 420, 268 Ill.Dec. 248, 778 N.E.2d 234 (2002), a case factually similar to this case, the defendant was convicted of telephone harassment of her former attorney. Jones called her attorney’s supervisor and said she was sick of getting the runaround and was going to kill her attorney. Id. 268 Ill.Dec. 248, 778 N.E.2d at 236. Jones, like Mr. Durie here, argued at trial and on appeal that her purpose in calling was to file a complaint about her attorney’s representation. Id. 268 Ill.Dec. 248, 778 N.E.2d at 237. The Illinois appellate court acknowledged that in addition to the harassing effect of Jones’s call, she “may have also had a legitimate purpose in calling to complain about the representation.” Id. Because the Illinois statute did not require that the call be made “solely for the purpose of threatening or harassing,” however, the court affirmed Jones’s conviction. Conversely here, the statute does require the calls be made “solely to harass.”
Therefore, under the logic of Jones, Mr. Durie’s probation should not have been revoked. The transcript of the voice mail messages shows Mr. Durie explained his arguments for his case in detail. This demonstrates Mr. Durie was “motivated at least in part” by a desire to convince Ms. McCravy that he had been unjustly convicted of theft. The evidence did not support a conclusion that Mr. Durie’s intent was solely to harass.
The trial court dismissed Mr. Durie’s argument that his intent was not solely to *177 harass by pointing out that Mr. Durie, as an attorney himself, knew that attorneys are ethically prohibited from communicating about a client’s case with persons represented by counsel without permission of that person’s counsel. Since Mr. Durie had also been charged with stalking pursuant to section 784.04(2), Florida Statutes (2001), which requires that harassment must have been done “for no legitimate purpose” to constitute stalking, the trial court may have confused the two definitions. Whether Mr. Durie’s intent was solely to harass or was mixed with an intent to persuade Ms. MeCravy that he had been unjustly convicted, however, is a different question from whether his intent to persuade was “legitimate.” Section 365.16(l)(d) does not include a legitimacy requirement.[5]
We therefore hold that the trial court erred as a matter of law in misinterpreting section 365.16 to find that Mr. Durie was guilty of making harassing telephone calls. Accordingly, we reverse the order revoking his probation.
Reversed.
FULMER, CAROLYN K, and DAVIS, CHARLES A., JR., Associate Judges, concur.

. This panel, consisting of judges from the Second District Court of Appeal, has been appointed by the Chief Justice to handle this appeal due to the recusal of the regular active judges of. the Fifth District Court of Appeal.

. The affidavit also charged Mr. Durie with stalking pursuant to section 784.04(2), Florida Statutes (2001), failing to comply with instructions of his parole officer, and failing to pay restitution to Medicaid. The trial court *174 found Mr. Durie not guilty of these additional charges.

. The term "repeatedly” has not been defined by Florida courts in this context. See Mark F. Lewis, Ask Not for Whom the Bell Tolls — Ask Why: A Look at the Harassing Telephone Call Statutes, 72 Fla. B J. 60, 61 (1998). In Commonwealth v. Wotan, 422 Mass. 740, 665 N.E.2d 976 (1996), in which only two of thousands of harassing calls could be traced to the defendant, the court reversed the conviction, finding the statutory term "repeatedly” was ambiguous. In State v. Placke, 733 S.W.2d 847 (Mo.Ct.App.1987), the court held that four answering machine messages left in close temporal proximity satisfied the "repeated” requirement of Missouri’s harassing telephone call statute. In United States v. Dorsey, 342 F.Supp. 311, 313 (E.D.Pa.1972), the court held- that for calls to have been made repeatedly, they must be "in close enough proximity to one another to rightly be called a single episode, and not separated by periods of months or years.”

. Whether voice mail messages are considered "conversation” has not been addressed in Florida law. Cases in other jurisdictions, however, have held that voice mail messages qualify for prosecution under harassing phone call statutes. See generally Lewis, supra note 2, at 61; see also, e.g., State v. Norgard, 156 Or.App. 190, 967 P.2d 499, 500 (1998) (holding the defendant could be convicted of making harassing phone calls where the calls *175 were made to an answering machine rather than directly to the victim); Placke, 733 S.W.2d at 849 (same); cf. United States v. Lampley, 573 F.2d 783 (3d Cir.1978) (holding one-way communication through a telephone operator can be sufficient to constitute a "conversation” for purposes of the harassing telephone call statute).

. Even if the court could impose a ''legitimacy” requirement, Mr. Durie did not violate Florida Rules of Professional Conduct in contacting Ms. MeCravy. Rule 4-4.2 of the Rules Regulating The Florida Bar states:
(a) In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer.
Mr. Durie was not his own counsel and Ms. MeCravy was not the opposing client. Moreover, the comment to rule 4-4.2 authorizes communication directly between parties and from a party to a government official:
[P]arties to a matter may communicate directly with each other and a lawyer having independent justification for communicating with the other party is permitted to do so. Communications authorized by law include, for example, the right of a party to a controversy with a government agency to speak with government officials about the matter.
R. Regulating Fla. Bar 4-4.2 cmt. (2001).