Argued and submitted June 4, reversed and remanded with instructions
August 4, 1999

## CLACKAMAS COUNTY,
a political subdivision of the State of Oregon,
*Plaintiff,*

*and*

## Jim GIDLEY,
Ernest A. Kunze and Gary Linn,
*Plaintiffs-Intervenors-Appellants,*

*and*

## Thor ARONSON,
*Plaintiff-Intervenor,*

*v.*

## Cynthia R. GAY
and WESTERN PARACHUTE SALES, INC.,
an Oregon corporation,
*Defendants-Respondents.*

(91-11-217; CA A102139)

986 P2d 588

Edward J. Sullivan argued the cause for appellants. With him on the briefs were Christina M. Hutchins and Preston Gates & Ellis.

Lawrence R. Derr argued the cause and filed the brief for respondents.

Before Edmonds, Presiding Judge, and Wollheim and Kistler, Judges.

KISTLER, J.

**KISTLER, J.**

This case arises out of a land use dispute among Clackamas County, defendants, and defendants' neighbors who intervened in the dispute. In 1993, the trial court enjoined defendants from using their land to conduct commercial airport and skydiving operations. The court stayed its judgment and has continued the stay, for various reasons, since 1993. In 1998, the trial court declined to dissolve the stay in light of new legislation. Intervenors appeal, and we reverse.

This is the third time this case has been before us. Clackamas County brought this action initially in 1991 to enjoin defendants from continuing their commercial airport and skydiving operations in violation of county zoning regulations. There was no serious dispute that defendants' activities were at odds with the county's regulations governing exclusive farm use zones; the only question was whether defendants' activities qualified as nonconforming uses. Because the trial court found that essentially none of defendants' activities qualified, it entered a judgment in 1993 prohibiting defendants from continuing almost all their activities "unless and until all required permits, including land use permits from Clackamas County under the Clackamas County Zoning and Development Ordinance and other applicable statutes * * * are obtained." Defendants appealed; the trial court stayed its injunction pending appeal; and we affirmed in 1995. *Clackamas County v. Gay* (*Gay I*), 133 Or App 131, 890 P2d 444, *rev den* 321 Or 137 (1995).[1]

In 1995, the legislature passed Senate Bill 1113. *See* Or Laws 1995, ch 285. That bill established a process by which the Department of Transportation and the Land Conservation and Development Commission (LCDC) would develop rules establishing permissible airport uses. The bill directed the Department to develop and submit proposed rules to LCDC, which was responsible for adopting the final rules. The bill also provided that local governments would amend their comprehensive plans and land use regulations

---

[1] We reversed the judgment in one minor respect that is not relevant here. *Gay I*, 133 Or App at 137.

to designate airport zones consistent with the rules LCDC adopted. Finally, section 7 of the bill provided that the limitations on land uses in exclusive farm use zones "do not apply to the provisions of this chapter regarding airport zones."

After the legislature passed Senate Bill 1113, defendants moved to vacate the trial court's judgment, claiming that section 7 effectively repealed all local government regulation of airport uses in exclusive farm use zones. The trial court denied the motion in 1996 but ordered that "the stay imposed by the order of this court entered June 29, 1993, is continued until further action by this court." Defendants appealed, and we once again affirmed. *Clackamas County v. Gay (Gay II)*, 146 Or App 706, 934 P2d 551, *rev den* 325 Or 438 (1997). We reasoned that section 7 of Senate Bill 1113 did not repeal existing land use regulations. 146 Or App at 710-11. Rather, it put in place a process for adopting new regulations. *Id.* We accordingly held that the judgment the trial court entered in 1993, as modified in *Gay I*, remained in effect. *Id.*

After we issued our decision in 1997, intervenors moved to dissolve the stay. They argued that House Bill 2605, which the legislature passed in 1997, preserved the 1993 judgment the circuit court entered in this case. *See* Or Laws 1997, ch 859. Defendants countered that House Bill 2605 expressly allowed existing uses to continue and that the portion of House Bill 2605 on which intervenors relied did not have the effect they perceived. After considering the parties' arguments, the trial court accepted defendants' interpretation of House Bill 2605 and denied intervenors' motion to dissolve the stay. Intervenors appealed.

As the parties frame the issue on appeal, the dispositive question is whether an exception for existing judicial decisions that was enacted as part of House Bill 2605 (and codified in ORS 836.612) either applies to or preserves the 1993 judgment the trial court entered in this case.[2] On that

---

[2] In 1996, the trial court continued the stay until Clackamas County adopted new land use regulations pursuant to Senate Bill 1113. The trial court relied on the same theory in part when it continued the stay in 1998. Defendants do not argue that there is any independent basis for sustaining the trial court's stay if we disagree with their interpretation of House Bill 2605. Rather, they appear to agree that the interpretation of House Bill 2605 is dispositive. We accordingly do not address

point, defendants acknowledge that the legislative history of House Bill 2605 demonstrates that the 1997 Legislature intended to preserve the trial court's 1993 judgment. They argue, however, that the language the legislature used in ORS 836.612 did not accomplish that purpose. Intervenors, on the other hand, find the text of the statute, at a minimum, ambiguous and the legislative history dispositive.

■     In analyzing the parties' arguments, we start with the statute's text and context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). ORS 836.600 *et seq.*, as amended by House Bill 2605 in 1997, accelerated the rulemaking process for airports that the legislature began in 1995.[3] Three sections of that statute are relevant to the parties' claims. First, ORS 836.608(3)(a) prevents local governments from limiting certain existing uses at airports. It provides that "[a] local government shall not impose limitations on the continued operation of uses described in ORS 836.616(2) that existed at any time during 1996 at [certain] airport[s]." Second, ORS 836.616(2) provides that, within airport boundaries established pursuant to LCDC rules, local governments "shall authorize" a list of specified uses and activities including the sort of activities in which defendants have been engaged. Third, ORS 836.612 excepts existing judicial decisions that limit or prohibit land use activities from the reach of ORS 836.608 and ORS 836.616. ORS 836.612 provides:

> "Nothing in ORS 836.608 or 836.616 is intended to allow the approval or expansion of a land use activity inside the boundaries of an airport if the activity has been limited or prohibited by the decision of a court of competent jurisdiction rendered prior to August 13, 1997."

Defendants raise two textual arguments in support of the trial court's judgment. They argue initially that ORS 836.612 does not apply to the judgment in this case. They reason that because the trial court's 1993 judgment has been

---

whether other grounds, independent of House Bill 2605, would warrant continuing the stay.

[3] As we explained in *Gay II*, the 1995 Legislature put a process in place for adopting new regulations for airports. The 1997 Legislature "jump started" that process by specifying particular uses that shall be permitted within airport zones and by also specifying exceptions to those permitted uses.

stayed since it was entered, their land use activities have not been "limited or prohibited" within the terms of ORS 836.612. It follows, they conclude, that ORS 836.612 is simply inapplicable. Defendant's argument is not supported by the statute's text. Textually, the issue is whether a court "decision," issued before August 13, 1997, "limited or prohibited" defendants' land use activities. The trial court's 1993 decision in this case both limited and prohibited defendants' land use activities. So did this court's decision in *Gay I*. The fact that the effect of those decisions has been stayed does not mean that the decisions themselves did not limit the uses to which defendants' land could be put. Accordingly, we hold that ORS 836.612 applies. The remaining question is what it means.

■ On that point, defendants argue that even if ORS 836.612 applies, it is clear that the legislature intended to preserve their land use activities when the texts of ORS 836.608(3)(a) and ORS 836.612 are read together. ORS 836.608(3)(a) provides: (1) that local governments "shall not impose limitations on the continued operation [of certain existing airport uses]"; (2) that local governments "shall allow for the growth of [those] uses"; (3) that local governments "shall not impose additional limitations" on certain approved uses; and (4) that the construction of additional hangers and tie-downs in certain situations "shall be permitted." Grammatically, one proposition is clear from the text. ORS 836.608(3)(a) is directed to future action by local governments. Each of the independent clauses in subsection (3)(a) is written in the future tense. Each specifies how local governments shall and shall not act in the future.

ORS 836.612 creates an exception to ORS 836.608. It provides: "Nothing in ORS 836.608 * * * is intended to allow the approval or expansion of a [judicially prohibited] land use activity." When the two sections are read together, their meaning seems fairly straightforward. The first section directs what local governments shall and shall not do in the future. The second provides that nothing in those future directions is intended to allow local governments to approve or expand airport uses that an existing judicial decision prohibits.[4] In short, ORS 836.612 makes clear that ORS

[4] ORS 836.612 preserves judicial decisions before the effective date of the 1997 amendments, August 13, 1997.

836.608(3)(a) applies prospectively: The future directions to local governments found in ORS 836.608(3)(a) are not intended to undo any existing judicial decisions.

Defendants advance a different interpretation. They view ORS 836.608(3)(a) as a self-executing provision that grandfathers-in land use activities that existed in 1996. They reason that ORS 836.612 only prevents them from seeking "approval of a new use or expansion of an existing use." It follows, defendants conclude, that ORS 836.612 would apply in this case only if the county were asked to approve a new use that the trial court's 1993 decision prohibited.

Textually, defendants' interpretation of ORS 836.608(3)(a) and ORS 836.612 is problematic. Their interpretation does not account for the legislature's use of the future tense in ORS 836.608(3)(a). *See Martin v. City of Albany*, 320 Or 175, 181, 880 P2d 926 (1994) (emphasizing verb tense). Moreover, they recast the statutory phrase "approval or expansion of a land use activity" in ORS 836.612 as the "approval of a new use or expansion of an existing one." Not only have defendants inserted the words "new" and "existing" into the text, but they also implicitly conclude that the words "approval" and "expansion" are directed respectively at two different classes of uses. The statute, however, refers without distinction to "approval or expansion of a land use activity." Defendants may be seeking to avoid rendering a portion of ORS 836.612 redundant,[5] but recasting the terms of the statute undercuts their claim that its meaning is unambiguous.

■ Although defendants' interpretation of ORS 836.608-(3)(a) and ORS 836.612 is problematic, we cannot say that it is implausible. Words are an imperfect medium at best, and the political compromises inherent in the legislative process do not always lend themselves easily to clear expression. When, as in this case, the text and context do not lead to one certain conclusion, we conclude that the statute is ambiguous

---

[5] If defendants were correct that ORS 836.608(3) grandfathers-in their land use activities, then the statement that "[n]othing in ORS 836.608 * * * is intended to allow the approval of a [judicially prohibited] land use activity" would be superfluous. Under defendants' interpretation of ORS 836.608(3)(a), their land use activity would have already been approved by operation of law. Perhaps to avoid that problem, defendants recast the text of ORS 836.612 to say that it would prevent them from relying on ORS 836.608 "to obtain approval of a new use."

and look to its legislative history to determine what the legislature intended. *PGE*, 317 Or at 611-12. Defendants acknowledged both in their brief and at oral argument that the legislative history demonstrates that the legislature specifically intended to exempt the judgment in this case from the reach of ORS 836.608. We both appreciate defendants' candor and accept their concession.

After HB 2605 was passed out of the House, the Senate "gutted and stuffed" it. The revised bill passed out of the Senate and was referred to a conference committee. As the bill initially came out of the conference committee, it failed to gain a majority in both houses. The bill was referred to the conference committee a second time. At that point, two competing amendments were proposed, one of which became ORS 836.612. Both amendments were intended to preserve existing judgments from the reach of what would become ORS 836.608 and ORS 836.616. The primary difference between the two amendments was that one amendment was limited to trial court judgments and the other (ORS 836.612) applied to judicial decisions whether they arose out of a trial court or an agency.

Perhaps the clearest sense of what the amendment that became ORS 836.612 means comes from a discussion between one of its opponents and its sponsor. Senator Johnson objected to the amendment because "it would apply to any land use decision that has been rendered out there in an airport situation." Tape recording, Conference Committee on HB 2605, July 2, 1997, Tape 2, Side 1. He reasoned that "[y]ou can't have a bill that changes the law regarding land use on airports and then say at the same time that all land use decisions that were made prior to the adoption of the law are still in effect." *Id.* At the request of Senator Josi, the amendment's sponsor, legislative counsel responded that a law can be changed prospectively without overturning existing decisions. *Id.* The counsel also explained that the amendment would apply only to a decision of a court of competent jurisdiction, not to every land use decision. Both the opponents and the sponsor of the amendment were clear that the amendment was specifically intended to protect two judicial decisions, one of which was the trial court's 1993 decision in this case.

The conference committee accepted Senator Josi's proposed amendment, and the legislature enacted it as part of HB 2605. Given that legislative history, as well as the text and context of the statute, we conclude that ORS 836.608(3)(a) and ORS 836.612 were intended to operate prospectively and to leave existing judicial decisions limiting or prohibiting uses within airport zones intact. The 1997 amendments to ORS 836.600 *et seq.* provide no basis for continuing the stay, and defendants have not argued on appeal that there is any other reason why the stay should be continued.

Reversed and remanded with instructions to dissolve the stay.