Submitted on briefs May 9, decision of the Court of Appeals reversed; case remanded to Court of Appeals with instructions July 21, 1994

COREY DEAN WEIDNER,
*Respondent on Review,*

*v.*

OREGON STATE PENITENTIARY,
Department of Corrections,
*Petitioner on Review.*

(CA A79489; SC S40391)

877 P2d 62

Michael D. Reynolds, Assistant Solicitor General, Salem, filed the petition for petitioner on review. With him on the petition were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Corey Dean Weidner, respondent on review *pro se*, filed a response.

GILLETTE, J.

## GILLETTE, J.

The issue in this case is whether an inmate who seeks to file a petition for judicial review of an order under ORS 421.195 (set out *post*) must file that petition in the Court of Appeals within 30 days of the date on which the order was made. In an unpublished order, the Court of Appeals held that a petition filed under ORS 421.195 need only be filed within 30 days of the inmate's receipt of the order. We allowed review and now reverse the order of the Court of Appeals and remand the case to that court with instructions to dismiss the petition for judicial review as untimely filed.

On August 3, 1992, respondent, an inmate at the Oregon State Correctional Institution, allegedly assaulted a fellow inmate. Following a disciplinary hearing, a hearings officer concluded that respondent had committed Assault I, a major violation of the rules of prohibited conduct, OAR 291-105-015(2)(a). The hearings officer issued a preliminary order imposing various disciplinary sanctions on respondent, including 120 days in disciplinary segregation.[1] The functional unit manager approved the order on November 2, 1992. Subsequently, a review of respondent's custody level was conducted. *See* OAR 291-105-066(9) (providing that "[i]nmates who commit a violation in category I on the [disciplinary] grid are subject to a classification review"). On review by the Classification Committee, respondent's custody level was scored as "maximum."[2] As a result, following his confinement in disciplinary segregation, respondent was transferred to the Intensive Management Unit (IMU)[3] at

---

[1] Other sanctions imposed on petitioner included a $200 fine, the noncertification of "good time" deductions from the term of petitioner's sentence under ORS 421.120, and a recommendation that the Board of Parole require petitioner to serve a longer term than he ordinarily would be required to serve prior to release on parole.

[2] OAR 291-104-010(4) provides for four levels of supervision or custody: maximum, close, medium, and minimum. The "maximum custody" classification is applied to inmates who "present [an] extreme risk of escape, violence, and/or disruption of the safe, secure, and orderly operation of the facility." OAR 291-104-010(4)(a).

[3] The Intensive Management Unit (IMU), which is located at the Oregon State Penitentiary, "is a maximum custody housing unit designated to provide the Department of Corrections the highest degree of inmate security and supervision." OAR 291-104-032. For a description of some of the conditions of confinement in IMU, see *Bagby v. OSP*, 118 Or App 421, 426, 847 P2d 898, *rev den* 317 Or 396 (1993).

OSP by an "administrative transfer request" approved on December 2, 1992.[4] *See* OAR 291-104-031(1) (providing that "[m]aximum custody male inmates shall be housed in the Intensive Management Unit"); OAR 291-104-010(4)(a) (same). Respondent was not provided with a hearing, other than the disciplinary hearing in connection with the assault charge, before his custody reclassification and transfer to IMU.

In April 1993, respondent filed a petition for judicial review in the Court of Appeals under ORS 421.195, seeking review of the "final order" placing him in IMU. In his petition, respondent alleged that he had never received a copy of the transfer order. At some time after that, the Department of Corrections provided respondent with a copy of the order. Respondent then filed a motion to stay enforcement of the order and also filed an amended petition "for the sole purpose of timeliness." In support of his motion to stay the order, respondent argued that there was a reasonable likelihood that he would prevail on judicial review of the order, because he had not been granted a hearing before being transferred to IMU.[5] OSP opposed the motion to stay, arguing that IMU transfer orders are not subject to judicial review under ORS 421.195. OSP also filed a motion to dismiss the petition as untimely.

In an unpublished order, the Court of Appeals concluded that "the time for filing a petition for judicial review begins when the order is issued to the inmate." Accordingly, the court dismissed respondent's original petition as premature and indicated that it would proceed with judicial review on respondent's amended petition. The court then granted

---

[4] No party disputes that an "administrative transfer request" that accomplishes the transfer of an inmate to IMU is, for purposes of review, an "order." *Cf.* ORS 183.310(5)(a) (an "order" is "any agency action expressed orally or in writing directed to a named person or named persons, other than employees, officers or members of an agency"). Consequently, we will use the term "order" or "transfer order" to describe the December 1992 administrative transfer request that resulted in respondent's placement in IMU.

[5] Respondent argued that, because transfer to IMU was not one of the sanctions imposed for his misconduct, the disciplinary hearing regarding that misconduct did not constitute the hearing to which he was entitled before being transferred to IMU. According to respondent, "placement in IMU is a completely separate agency action, and therefore required completely separate hearings."

respondent's motion to stay the order confining respondent in IMU, concluding that

> "[respondent] is reasonably likely to prevail on judicial review, because if a transfer to IMU is a reviewable event under ORS 421.195, as the court held it was in *Bagby v. OSP*, 118 Or App 421, 847 P2d 898[, *rev den* 317 Or 396 (1993)], then an inmate placed in IMU is entitled to a hearing under ORS 421.180 to 421.190 and the administrative rules adopted pursuant to those statutes."

We allowed OSP's petition for review of the Court of Appeals' order to address whether IMU transfer orders are subject to judicial review under ORS 421.195. In *State ex rel Hall v. Riggs*, 319 Or 282, 877 P2d 56 (1994), we confronted that same issue. In that case, we held that ORS 421.195 entitles an inmate who has been placed in IMU for more than seven days to judicial review of the order that places him there. That holding applies in this case, as well. That holding is not dispositive here, however, because OSP argues that, even if IMU transfer orders generally are subject to judicial review under ORS 421.195, the order in this case is not subject to review, because the petition was untimely filed. For the reasons that follow, we agree.

ORS 421.195 provides:

> "If an order places an inmate in segregation or isolation status for more than seven days, institutionally transfers the inmate for disciplinary reasons or provides for nondeduction from the term of the sentence under ORS 421.120(1)(a) and (b), the order and the proceedings underlying the order are subject to review by the Court of Appeals upon petition to that court *filed within 30 days of the order for which review is sought*. The department shall transmit to the court the record of the proceeding, or, if the inmate agrees, a shortened record. A copy of the record transmitted shall be delivered to the inmate by the department. The court may affirm, reverse or remand the order on the same basis as provided in ORS 183.482. The filing of the petition shall not stay the department's order, but the department may do so, or the court may order a stay upon application on such terms as it deems proper."

(Emphasis supplied.)

Although the reasons for the delay are not documented, it appears to be uncontested (for the purposes of this

case) that respondent did not receive a copy of the order placing him in IMU until after he filed his initial petition for judicial review. It also appears to be uncontested that, once a copy of the order placing him in IMU was actually delivered to him, respondent filed a second petition for judicial review within 30 days of receiving that copy. OSP argues, however, that neither petition was timely, because both were filed more than 30 days after the date of the order, which was December 2, 1992. As noted, the Court of Appeals dismissed the foregoing argument, ruling that the phrase, "filed within 30 days of the order," in ORS 421.195 required only that the petition for judicial review under that statute be filed within 30 days after the challenged order was "issued" to the inmate. "Issuance," for the Court of Appeals, meant actual receipt by the inmate.

■     OSP's argument on the timeliness issue is very narrow: An inmate has 30 days within which to challenge an order placing the inmate in IMU, whether or not that order is *ever* received by the inmate. That argument is one about the intent of the legislature in enacting ORS 421.195 and, more particularly, the legislature's intent as to the phrase "within 30 days of the order." When seeking to identify the intent of the legislature, this court follows the template set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

Beginning with the first level of inquiry — text and context — we cannot say that the legislature's intent is clear. There are at least three possible interpretations of the moment in time envisioned by the legislature when it referred to "within 30 days of the order." The first possible reading is that given the phrase by OSP: The reference is to *the date that actually appears on the order, or which evidence otherwise establishes to be the date on which the order actually was made.* A second possible reading is that the phrase refers to *the date on which the order actually was transmitted, whether by mail or otherwise, to the intended recipient.* A third possible reading is that given the phrase by the Court of Appeals: The reference is to *the date — whether called the date the order was "issued" or by some other label — on which the order was received by the person to whom it was directed.*

We note in passing that the construction adopted by the Court of Appeals does not appear to be the most likely one.

The reference to "within 30 days of the order" appears to be concerned *with the order*, not with some event extrinsic to it, such as the date on which it was received. For the same reason, what might be deemed the "intermediate" construction of the pertinent phrase, *i.e.*, the construction that the reference is to the date on which the order is transmitted, does not appear to be the most likely.

What does appear the most likely reading is that proffered by OSP, namely, that the 30 days for filing a petition for judicial review under ORS 421.195 begins to run from the date on which the order itself comes into existence. This is true, not only because the wording itself most readily lends itself to that construction, but also because most persons subject to the kind of order contemplated by ORS 421.195 will be aware immediately of the *fact* of the order, because the order likely will have led to a change in the persons' physical circumstances.[6] Nonetheless, because all of the foregoing readings of the pertinent wording remain possible, we proceed to the second level of inquiry, *viz*, legislative history.

That second level need not detain us long. Our review of the legislative history of ORS 421.195 has not revealed anything that shines any light on what precisely it was that the legislature had in mind when it chose to use the phrase, "within 30 days of the order." This takes us to the third level of inquiry.

At the third level, this court utilizes certain maxims of statutory construction in order to reach a conclusion as to the question of legislative intent that it faces. *PGE v. Bureau of Labor and Industries, supra*, 317 Or at 612. Among those maxims, the only one that we find to be helpful is the rule that the court will attempt to determine how the legislature would have intended the statute to apply, had the legislature considered the issue. *Ibid.* We apply that maxim here.

---

[6] That certainly will be true with respect to transfers to IMU, such as that experienced by respondent in this case. It also is true of those who have been transferred institutionally. It is less clear that it will be true of those in the third category contemplated by the first sentence of ORS 421.195, *viz*, those who have been subjected to deductions of certain kinds of "good time."

As indicated, there appear to be at least three choices that the legislature could make. Each has its difficulties and its merits, but we believe that the merits preponderate in favor of the certainty that attaches to the construction urged by OSP. For that construction to be applied, it is necessary to look solely to the order itself, assuming only that it has a date. Moreover, the majority of the kinds of dispositions with which ORS 421.195 deals are among those that are immediately apparent to the inmate. We believe that both of the foregoing considerations would have persuaded the legislature, had it directly considered the question, to intend the construction that we give the words that it enacted.

It follows from the foregoing construction of the operative provision of ORS 421.195 that neither petition for judicial review filed by respondent in the Court of Appeals in this case was filed "within 30 days of the order." The Court of Appeals thus did not have jurisdiction to consider the merits of either petition. It should have dismissed the amended petition, as it did the original.

The decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals with instructions to dismiss the petition for judicial review.