Argued and submitted January 31, 2001; resubmitted en banc March 6, affirmed by an equally divided court April 24, 2002

STATE OF OREGON,
*Respondent,*

*v.*

TODD ANTHONY PINE,
*Appellant.*

980736296; A105917

45 P3d 151

Monica L. Finch, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Public Defender.

Brendan C. Dunn, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy

Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Deits, Presiding Judge, and Edmonds, Landau, Haselton, Armstrong, Linder, Wollheim, Kistler, and Brewer, Judges, and Ceniceros, Senior Judge.

PER CURIAM

Wollheim, J., concurring.

Edmonds, J., concurring.

Haselton, J., dissenting.

Armstrong, J., dissenting.

**WOLLHEIM, J.,** concurring.

Defendant appeals from a judgment of conviction for assault in the third degree (assault III), ORS 163.165, and assigns error to the trial court's instruction to the jury that it could convict defendant of assault III if it found that he had "aided another who was actually present in causing physical injury." We review jury instructions for errors of law, *State v. Reese*, 156 Or App 406, 409, 967 P2d 514 (1998), and will reverse only if, when considered as a whole, the instruction " 'created an erroneous impression of the law in the minds of the [jury] which affected the outcome of the case.' " *State v. Thompson*, 328 Or 248, 266, 971 P2d 879 (1999) (quoting *Waterway Terminals v. P.S. Lord*, 256 Or 361, 370, 474 P2d 309 (1970)). We affirm by an equally divided court. I write separately to explain why I concur in that result.

Because the facts are disputed and because we are reviewing the propriety of jury instructions, I state both parties' versions of the facts, beginning with the state's version. *State v. Davis*, 116 Or App 654, 657, 842 P2d 463 (1992) (defendant is entitled to have jury correctly instructed on his theory of the case if there is evidence to support the theory). In July 1998, Stemson, the victim, clocked out of work at 2:15 a.m. after working the swing shift at Oak Harbor Freight Lines. As he drove away from work, he saw defendant and defendant's brother, Pine, at the end of the driveway. Stemson honked at the brothers and continued to drive away. Pine got into his car and followed Stemson. Pine passed Stemson and stopped in front of Stemson's vehicle, forcing Stemson to drive off the road. Pine then got out of his car, approached Stemson, who was still seat belted into his car, and punched him five times. Stemson got out of the car, and Pine continued to hit Stemson in the face about 10 more times. Defendant, who had followed Pine on his motorcycle, was present during the encounter but initially stood by his motorcycle. Stemson then grabbed Pine by the throat and tripped Pine so that he landed on his back. Stemson was about to kick Pine when defendant ran up and kicked Stemson in the groin. Stemson fell down on all fours, and defendant and Pine continued to kick and punch Stemson. The beating stopped when a truck approached and Stemson

ran to it, jumped in, and was driven away. Stemson was later taken to the hospital where he received stitches above his left eye and was treated for a broken nose.

Defendant's version of the facts is that he was waiting with Pine in a cul-de-sac outside of Oak Harbor Freight Lines for some of Pine's coworkers. While they were waiting, Stemson drove by and Pine jumped into his car and began to follow Stemson. Defendant followed Pine on his motorcycle. He then saw Stemson and Pine fighting. When he saw Stemson on top of Pine, he grabbed Stemson and "rolled him off" of Pine. Defendant testified that, as he rolled Stemson off, he "kind of threw him," and Stemson began to retreat. At that point, the truck approached and Stemson ran over to it, jumped in, and was driven away. Defendant denied kicking Stemson in the groin or hitting and kicking Stemson in general.

Following a jury trial, defendant was convicted of assault III. ORS 163.165.[1] On appeal, defendant argues that the trial court's instruction concerning the elements of assault III was erroneous. The trial court instructed the jury on the elements of assault III and also on the lesser-included offense of assault IV, ORS 163.160.[2] When attempting to clarify the two offenses to the jury, the trial court gave the instruction that "[assault III] requires proof that the defendant either caused physical injury while being aided by another who was actually present, or * * * *aided another who was actually present in causing physical injury.*" (Emphasis added.) Defendant argues that the italicized portion of the instruction was legally insufficient. Specifically, defendant contends that, in instances where a person merely "aids" a primary assailant in causing physical injury, only the primary assailant who caused the physical injury "while being aided by another person" (conduct which, without the aiding, would be punishable only as an assault IV) is guilty of assault

[1] ORS 163.165(1)(e) provides that a person commits the crime of assault III if the person "[w]hile being aided by another person actually present, intentionally or knowingly causes physical injury to another[.]"

[2] ORS 163.160(1)(a) provides that a person commits the crime of assault IV if the person "[i]ntentionally, knowingly or recklessly causes physical injury to another[.]"

III. Therefore, defendant argues, if the jury believed his testimony that he merely assisted Pine while Pine caused physical injury to Stemson, then the most that he could be criminally liable for is assault IV on an aiding and abetting theory.

Defendant's argument, as I understand it, is that, under his version of the facts, he could not be directly liable for assault III because he was not "aided by another person" and he did not personally "cause[ ] physical injury to another." *See* ORS 163.165(1)(e). Second, defendant argues that that result is unchanged under the state's aiding and abetting theory of liability because, under the circumstances, the criminal conduct that he aided constituted assault IV, not assault III. *See* ORS 161.155(2)(b) (describing aiding and abetting accomplice liability).

Before addressing the merits of defendant's argument, I highlight several material considerations that are not in dispute. First, the relevant difference between the assault IV and assault III provisions at issue is that the assault III statute adds an additional element—"[w]hile being aided by another person actually present"—that elevates the crime from assault IV to assault III. Second, defendant acknowledges that, even under his version of the facts, he is guilty of assault IV for aiding and abetting Pine's assault of Stemson. *See* ORS 161.155(2)(b) (person is "criminally liable for the conduct of another person" if, *inter alia*, he "[a]id[s] or abets or agrees or attempts to aid or abet such other person in planning or committing the crime"). Third, defendant does not dispute that he aided Pine and was "actually present" during Pine's assault of Stemson. Finally, the state can satisfy the "causes physical injury to another" element of the assault III statute by showing either that defendant committed that conduct directly or that defendant aided and abetted Pine in that conduct. *Id.*; *see also* ORS 161.150 ("A person is guilty of a crime if it is committed by [his] own conduct or by the conduct of another person for which [he] is criminally liable, *or both*.") (Emphasis added.)

With those considerations in mind, the issues narrow considerably. Defendant acknowledges that he is guilty, via an aiding and abetting theory of liability, for Pine's conduct. It follows, therefore, that, because defendant does not

dispute that he aided and abetted Pine in physically injuring Stemson, the physical injury *element* of the assault III statute is satisfied here. ORS 161.150.[3] Thus, the only true issue here is whether the trial court erred in instructing the jury that defendant would be guilty of assault III if he "aided" Pine. Resolution of that issue turns on whether a person who is "actually present" and aids another in assaulting a third person is necessarily also "aided by" the primary assailant for purposes of ORS 163.165(1)(e).

Defendant argues that such a construction is inconsistent with the plain language of ORS 163.165(1)(e) by stating:

"The state's proposed construction would require the insertion of the words 'aiding, or' into the definition of assault in the third degree provided by ORS 163.165(1)(e), to create the alternate definition of the crime of which the jury was instructed. Under the state's construction, the crime would then cover situations where a person while *aiding, or* being aided by, another person actually present,

---

[3] Judge Haselton's dissent takes me to task for what it characterizes as my "mix-and-match" approach of employing both direct and aiding and abetting theories to explain why the given jury instruction was appropriate. 181 Or App at 122 (Haselton, J., dissenting). That analytical approach, however, is explicitly allowed by ORS 161.150, which states that a person is "guilty of a crime if it is committed by the person's own conduct or by the conduct of another person for which the person is criminally liable, *or both*." (Emphasis added.)

To the extent that the language in ORS 161.150—and particularly "or both"—might be considered ambiguous, the legislative history confirms that my approach comports with the legislature's intent in enacting ORS 161.150. The legislative history establishes that ORS 161.150 was based on, *inter alia*, the criminal liability provisions of the Michigan Revised Criminal Code of 1967. Minutes, Senate Committee on Criminal Law and Procedures, SB 40, February 23, 1971, p 5. In particular, ORS 161.150 is materially indistinguishable from section 401 of the Michigan Revised Criminal Code of 1967, which states that "[a] person may be guilty of an offense if it is committed by his own behavior or by the behavior of another person for which he is legally accountable as provided in this chapter, or both." Commenting on the application of that provision, the official Committee commentary to section 401 explains that "[t]his section affirms the basic principle that liability is based on behavior, coupled with the equal affirmation that one may be accountable for the behavior of another. *When such accountability exists, it is and should be immaterial whether defendant's own behavior, that for which he is accountable, or both in combination present the elements of the crime charged*." Commentary to Criminal Law Revision Commission Proposed Michigan Revised Criminal Code, Final Draft (September 1967), § 401, 44-45. (Emphasis added.) That commentary suggests that my "mix-and-match" analysis in this case, far from being "deeply troubling," *see* 181 Or App at 122 (Haselton, J., dissenting), is exactly what the legislature contemplated when it enacted ORS 161.150.

intentionally or knowingly causes physical injury to another. *See* ORS 163.165(1)(e). The legislature, however, did *not* include this language, and this court cannot insert it without violating the rules of statutory construction." (Emphasis in original.)

Thus, in defendant's view, the "while being aided by another person" language plainly and unambiguously distinguishes between those who aid and those who are aided. I disagree.

Defendant is correct insofar as he suggests that ORS 163.165(1)(e) can be read to distinguish between individuals who merely "aid" the primary assailant and those who are "aided by" another. Defendant is incorrect, however, in suggesting that no other plausible readings exist. In particular, ORS 163.165(1)(e) increases criminal liability for individuals who are "aided" by another in circumstances where more than one potential assailant is "actually present." As a legal term of art,[4] "aid" means "[t]o support, help, assist or strengthen. Act in cooperation with; supplement the efforts of others." *Black's Law Dictionary*, 68 (6th ed 1990). Thus, the "aided by" language in ORS 163.165(1)(e), read in conjunction with the "actually present" language, suggests that the legislature sought to address situations in which multiple persons assist or strengthen one another in a common effort to injure a third party physically. Given that context, one plausible reading of the "aided by another person actually present" language is that all individuals involved in a multi-assailant assault simultaneously "aid" and are "aided by" one another in committing that assault. Because the text and context of ORS 163.165(1)(e) is ambiguous as to whether all individuals involved in and present during the assault of a victim are "aided by" one another in that common endeavor, I turn to the applicable legislative history. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611-12, 859 P2d 1143 (1993).[5]

---

[4] *See McIntire v. Forbes*, 322 Or 426, 431, 909 P2d 846 (1996) ("Analysis of text also includes reference to well-established legal meanings for terms that the legislature has used.").

[5] Judge Haselton's dissent agrees with defendant that ORS 163.165(1)(e) is unambiguous. 181 Or App at 120 (Haselton, J., dissenting). As noted, defendant reads ORS 163.165(1)(e) without reference to the well-established legal meaning for the term "aid." Thus, defendant and the dissent ignore one key clue for identifying the legislature's intent in enacting ORS 163.165(1)(e). In addition, our role in

ORS 163.165(1)(e) was adopted in 1991 with the passage of House Bill 2018, which was proposed by then-Assistant Attorney General Terry Ann Leggert to "increase the penalty for an assault committed by two or more persons." Testimony, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2018, March 19, 1991, Ex B (statement of Leggert). In an exchange with Representatives Johnson and Brian, Leggert clarified the intent with respect to the bill's "while being aided by another person actually present" language:

Johnson: "You have the word 'aided' in here 'while being aided by another person.' I read that as being your intent that two people actually both hit the victim."

Leggert: "Or one person holds and the other one hits— things like that."

Johnson: "There's two people in this thing?'"

Leggert: "Right."

Johnson: "Not just being aided in terms of cheering or anything like that? I want to get a good idea of your intent here * * *."

Brian: "On that same question, wouldn't 'aided' include a lookout?"

Leggert: "* * * What I tried to do is parrot the language of the robbery statutes. The person has to be there actually, actively participating. It would be different that someone in a corner over here, soliciting for instance. Where you would be guilty of the primary action but I've just solicited or encouraged you to commit the crime. I would think that, my intent is anyway, that you want to

---

analyzing a statute is not to refrain from resorting to legislative history simply because statutory language is only marginally ambiguous. Rather, under the *PGE* framework, a review of legislative history is necessary any time a "court can discern one most likely statutory meaning from the text and context, but cannot rule out other plausible meanings." *Martin v. City of Albany*, 320 Or 175, 184, 880 P2d 926 (1994) (describing the application of the *PGE* framework in *Weidner v. OSP*, 319 Or 295, 301, 877 P2d 62 (1994)). Tellingly, Judge Haselton's dissent does not explain why the two potential constructions of ORS 163.165(1)(e) that I have identified are not, at least, "plausible."

have this be people who are actively participating in it. That is how I understand the robbery II statute [ORS 164.405(1)(b)] has been interpreted, so I thought it would be good to just parallel that language. But you are right. You want someone who is there actually helping out. In some cases, it may be that they prevent the victim's escape. They surround the person and three or four are beating him up, and the guy tries to get away and they block their path. So it may be that kind of participation, which I believe is also why we want to add the language 'actually present,' to make sure we *just get all of those people who are there.*" Tape recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2018, March 19, 1991, Tape 56, Side A (testimony of Leggert) (emphasis added).

Leggert later gave similar testimony during a House Judiciary Committee work session, when she indicated that either preventing a victim's escape or chasing a victim constituted aiding sufficient to subject all of the assailants to liability under the statute:

"If you prevent them from escaping, then you are aiding the person who is assaulting them, and I think that should be covered. * * * I would agree also that [a person who pursues a victim prior to the assault] should be covered, because it is the idea of tracking the prey down, and grabbing them to facilitate the assault. So that should be covered." Tape recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2018, March 19, 1991, Tape 55, Side B (testimony of Leggert).

Leggert's testimony is significant because it evinces a legislative intent to subject all individuals involved in a multiassailant assault to liability for assault III, regardless of whether they were the "aiders" or the "aided." In other words, in instances where multiple assailants are actually present at the scene of an assault that results in physical injury to the victim, all of the assailants are, in effect, "aiding" one another in furthering the assault and are "aided by" their co-assailants.[6]

---

[6] My conclusion that all persons involved in a multiple person assault that results in injury to the victim are guilty of assault III comports with the history and

That legislative history is dispositive. Defendant, by being present and participating in the assault of Stemson, was both aiding Pine and was aided by Pine in committing the assault. Thus, even if the jury relied on the trial court's instruction and found that defendant "aided" Pine in assaulting Stemson, that finding is effectively also a finding that defendant was "aided by" Pine. Accordingly, I concur that the jury instruction that defendant complains about—in which the trial court suggested that the jury could convict defendant if he "aided" or was "aided by" Pine—was correct.

Deits, C. J., and Linder, J., and Ceniceros, S. J., join in this concurrence.

**EDMONDS, J.,** concurring.

On appeal, defendant assigns error to a jury instruction given by the trial court. Defendant and Wade Pine (Pine) were indicted jointly for the crime of assault in the third degree pursuant to ORS 163.165(1). The indictment alleges, in relevant part, that "the said defendants * * * did unlawfully and intentionally, while being aided by another person actually present, cause physical injury to RICHARD BRIAN STEMSON." At trial, the state offered evidence that Pine attacked Stemson and that Stemson was about to kick Pine when defendant ran up and kicked Stemson in the groin. Thereafter, Pine and defendant continued to kick and punch Stemson. Defendant denied kicking Stemson in the groin or punching or kicking him. He said that his only participation in the fray was to roll Stemson off of Pine. Stemson suffered a broken nose and required stitches above his eye as the result of the assault.

The trial court instructed the jury that

---

case law relating to the robbery II statute, the statute after which Leggert modeled the assault III statute at issue. *See State v. Howe*, 26 Or App 743, 746, 554 P2d 605, *rev den* 276 Or 555 (1976) (suggesting that each confederate to a robbery is aiding another person actually present, and thus is guilty of robbery II); Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report (July 1970), §§ 148, 149 (indicating that, in instances where two unarmed persons accost a victim and one of the persons demands the victim's money, both of the perpetrators are guilty of robbery II); *see also State ex rel Juv. Dept. v. Greenwood*, 107 Or App 678, 681, 813 P2d 58 (1991) (youth could face accomplice liability for robbery II where evidence supported theory that youth aided her sister in robbery).

"Assault in the Third Degree requires proof that the defendant either caused physical injury while being aided by another, who was actually present, or aided by another who was actually present, -I'm sorry- aided another who was actually present in causing physical injury."

The following colloquy took place after the trial court gave the instruction.

"[Defense Counsel]:   Just that the defense excepts to that instruction because—I don't know how much detail you want me to go into, but—

"[The Court]:   Well, I think we can put it this way. You—correct me if I'm wrong, feel that that is an incorrect statement of law inasmuch as you feel in order to prove an Assault in the Third Degree against your client, the state must prove that your client caused the injury. Does that kind of sum it up?

"[Defense Counsel]:   Yes, and although I think the Assault III instruction correctly states the law, the special instruction was confusing and potentially misstated the law in that it said that if he was assaulting and being aided, or if he was aiding someone who was assaulting, and it's the second phrase that I was objecting to."

Defendant claims that "[t]he trial court erred by failing to correctly instruct the jury concerning the elements of assault in the third degree." He argues:

"When the trial court instructed the jury on the second theory of conviction, it told the jury it could convict defendant of assault in the third degree if it found that defendant aided another who was actually present in causing physical injury to the victim. That definition is insufficient as a matter of law. The plain language of ORS 163.165 requires two additional elements to obtain a conviction for assault in the third degree. Under the plain language of the statute, the jury was required to find that defendant himself caused physical injury to the victim, and that defendant was aided by another in doing so. The court's instruction allowed the jury to convict without finding either of these elements."

The gist of defendant's exception and assignment of error is his contention that ORS 163.165(1)(e) requires proof that defendant personally caused physical injury to Stemson, aided by Pine. According to defendant, the trial court's jury

instruction erroneously told the jury that, if it found that Pine had physically injured Stemson (which defendant characterizes as fourth-degree assault), it could find defendant guilty of third-degree assault based on his aiding and abetting Pine without evidence that defendant personally caused Stemson's injuries. Defendant's argument misunderstands how ORS 163.165(1)(e) operates in connection with ORS 161.155(2)(b).

ORS 163.165 provides, in relevant part:

"(1)   A person commits the crime of assault in the third degree if the person:

"* * * * *

"(e)   While being aided by another person actually present, intentionally or knowingly causes physical injury to another[.]"

ORS 161.155 provides, in relevant part:

"A person is criminally liable for the conduct of another person constituting a crime if:

"* * * * *

"(2)   With the intent to promote or facilitate the commission of the crime the person:

"* * * * *

"(b)   Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime[.]"

Under the indictment, the state was entitled to prove that defendant, aided or abetted by Pine, was guilty of assault in the third degree if he was the person who caused physical injury to Stemson. Alternatively, it could prove that defendant committed third-degree assault by aiding and abetting Pine if Pine committed third-degree assault. Under the second theory, the state had to prove that Pine's conduct satisfied the elements of ORS 163.165(1)(e), constituting third-degree assault, and that additionally, defendant's conduct satisfied the aiding and abetting requirements of ORS 161.155(2)(b). Defendant's aiding and abetting under those circumstances would result in him being criminally liable for the same crime committed by Pine. Thus, the trial court's

instruction that told the jury that it could convict defendant, even if he did not cause Stemson's physical injuries, so long as he was present and aided and abetted Pine (the person who caused Stemson's physical injuries), was a correct statement of law.

According to defendant, ORS 161.155 cannot operate in the above fashion because a principal's fourth-degree assault is elevated to third-degree assault under ORS 163.165(1)(e) only when the assailant is aided and abetted by another person. Defendant argues that the use of his conduct to enhance Pine's fourth-degree assault to third-degree assault and also to make him criminally liable for Pine's third-degree assault "constitutes circular reasoning and double counting" because the same conduct enhances Pine's crime and additionally makes defendant liable for an enhanced crime. Defendant cites no legal precedent for the proposition that the same evidence cannot be used to satisfy two elements of the same crime as alleged in the charging instrument. In fact, some criminal statutes clearly contemplate that occurrence. For instance, ORS 163.175(1)(c) requires the state to prove that a defendant "*recklessly* cause[d] serious physical injury to another by means of a deadly or dangerous weapon *under circumstances manifesting extreme indifference to the value of human life.*" The evidence of driving erratically while intoxicated can be used to satisfy both the element of acting "recklessly" and the element of "manifesting extreme indifference to the value of human life." *See, e.g., State v. Boone*, 294 Or 630, 639, 661 P2d 917 (1983).

Here, the state had to prove as part of the elements of the charge in the indictment against defendant that Pine committed conduct amounting to assault in the third degree and that defendant aided and abetted him in that crime.[1] The

---

[1] ORS 161.160 provides, in part:

"In any prosecution for a crime in which criminal liability is based upon the conduct of another person pursuant to ORS 161.155, it is no defense that:

"(1) Such other person has not been prosecuted for or convicted of any crime based upon the conduct in question or has been convicted of a different crime or degree of crime[.]"

Also, under ORS 161.160(1), the fact that Pine's crime is enhanced to third-degree assault by defendant's participation is of no consequence to the charge against defendant.

evidence of defendant's involvement in the assault, in concert with the other evidence, satisfies both an element of ORS 163.165(1)(e) and the elements of ORS 161.155(2)(b), which were put into issue by the state's alternative theory.

Consequently, although I agree with Judge Haselton that ORS 163.165(1)(e) is unambiguous, that fact plays no role in the analysis. The question is whether the trial court's instruction was a misstatement of the law. Because the trial court correctly instructed the jury, based on the combined effect of ORS 163.165(1)(e) and ORS 161.155(2)(b), there was no error.

Judge Armstrong reasons that ORS 161.165(2) operates to prevent defendant from being criminally liable for third-degree assault because "[his conduct] is a necessary incident of third-degree assault that a person aid the person who injures the victim." 181 Or App at 124 (Armstrong, J., dissenting). He misunderstands the import of the statute. ORS 161.165(2) provides that a person is not criminally liable for the conduct of another if "[t]he crime is so defined that the conduct of the person is necessarily incidental thereto." The statute, in text and context, focuses on the elements of a crime as defined by the legislature. It exempts only *victims* of crimes and other similarly situated persons from criminal liability. *See also* Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report (July 1970), § 15. ORS 161.155 (2) is intended to exempt from criminal liability persons whom the legislature does not consider to be accomplices to criminal conduct. An "accomplice" is a person who is subject to criminal charge and punishment for the *same* crime that the principal offender commits because that person, with common intent with the principal offender, unites with the principal in the commission of the crime. *State v. Barnett*, 249 Or 226, 228, 437 P2d 821 (1968); *State v. Nice*, 240 Or 343, 345, 401 P2d 296 (1965). A person is not an accomplice to a crime merely because the person's conduct was part of the operative facts that gave rise to the crime. For example, the unmarried party to a bigamous marriage is not an accomplice of the bigamist because, although the person's conduct is an accompaniment or is necessarily incidental to the commission of the crime, that person's conduct does not satisfy the elements of the

crime under which the principal offender is charged. Rather, to become an accomplice, a defendant must commit, personally or in concert with others, the elements of the same crime committed by the principal offender. Here, defendant acted as an accomplice to the commission of third-degree assault. His conduct, together with the conduct of Pine and united by common intent, satisfies the elements of third-degree assault and therefore, does not exempt him from criminal liability for that crime under ORS 161.165(2).

For those reasons, I agree that defendant's conviction should be affirmed.

**HASELTON, J.,** dissenting.

Under ORS 163.165(1)(e), a person is guilty of assault III if the person (1) intentionally or knowingly causes physical injury to the victim, while (2) "being aided by another person actually present." The concurring opinions conclude that the obverse is also true—that is, that a person is guilty of Assault III if the person, while actually present, aids another person who is causing physical injury to the victim. That result rewrites ORS 163.165(1)(e) and is insupportable under the principles of aiding and abetting liability. *See* ORS 161.155(2)(b). Consequently, I respectfully dissent.

ORS 163.165(1) provides, in part:

"A person commits the crime of assault in the third degree if the person:

"* * * * * *

"(e) While being aided by another person actually present, intentionally or knowingly causes physical injury to another[.]"

Here, the parties presented diametrically different versions of defendant's actions. The state presented evidence that both defendant and his brother assaulted the victim, Stemson, sequentially and then concurrently. Under defendant's version of the facts, Stemson and his brother were fighting, and defendant's involvement was limited to pulling Stemson off his brother. The court ultimately instructed the jury:

"Assault in the Third Degree requires proof that the defendant either *caused physical injury while being aided by another who was actually present,* or * * * **aided another who was actually present in causing physical injury**."

Everyone agrees that the first, italicized phrase was legally correct—and, indeed, tracks the language of ORS 163.165(1)(e). And everyone agrees that, under that component of the instruction, if the jury adopted the state's version of the incident, it could convict defendant of assault III—*i.e.,* that defendant would have caused physical injury to Stemson while being aided by another person who was actually present (his brother).

The problem is with the boldfaced component of the instruction, which has no referent in the statute. Defendant contends that, given that language, the jury was authorized to convict defendant of assault III even if the jury adopted defendant's version of the events—*viz.,* that defendant did not cause physical injury to Stemson but, instead, merely aided his brother by pulling Stemson off his brother. Defendant contends that ORS 163.165(1)(e) does not impose culpability in such circumstances—and that, instead, defendant could be guilty only of aiding and abetting under assault IV. ORS 161.155(2)(b).

Before exploring the particulars of the parties' arguments, and the concurring opinions' analysis, at least one thing is clear: Under *any* construction of ORS 163.165(1)(e), the challenged instruction was a misstatement of the law. Again, under that instruction, a person commits assault III if the person "aided another who was actually present in causing physical injury." Thus, under the instruction, if A gave B a plane ticket to fly from Portland to Bend to assault C, and B, in fact, assaulted C in Bend while A remained in Portland, A would be guilty of assault III. That result cannot be squared with the language of ORS 163.165(1)(e), which, at the least, requires that the aiding third person ("another person") be "actually present" during the assault. Consequently, the court's instruction was erroneous in the abstract.

But the instruction suffers from much more profound problems, which this case highlights. Consider another

hypothetical: X beats up Y, causing physical injury, while Z keeps bystanders from intervening. Clearly, X is guilty of assault III—he caused physical injury while being aided by another person (Z) who was physically present. But what about Z? Under the disputed instruction, as ratified by the concurring opinions, Z is also guilty of assault III.

How so? Returning to the statutory text, Z cannot be directly liable (*i.e.*, liable as a principal) under ORS 163.165(1)(e). To repeat, the statute provides that a person commits assault III if the person,

> "[w]hile being aided by another actually present, intentionally or knowingly causes physical injury to another[.]"

That language is unambiguous. It is, both literally and reasonably, susceptible to only one reading: To impose principal liability under the statute, the *defendant personally* must have caused physical injury while being aided by another. There must be two actors—the actual assailant and the aider—and only the actual assailant has primary liability under the statute. Thus, if the jury adopted defendant's version of the incident here, defendant could not be guilty of assault III as a principal because defendant never caused Stemson physical injury; rather, defendant merely aided his brother, who caused the injury. For the same reasons, Z in the hypothetical could have no principal liability because he did not assault Y but, instead, merely aided X's assault.

So what of aiding and abetting liability? At that point, the inquiry presents a variation on the "chicken or the egg?" conundrum: What came first in this case—the assault IV or the assault III? Defendant posits that (1) his brother's assault on Stemson was, by itself, an assault IV; and (2) when he pulled Stemson off his brother, he was, at worst, aiding and abetting an assault IV. Defendant acknowledges that his assistance would transform his brother's assault IV into an assault III—but he contends that that transmutation of his brother's liability cannot be used, in "double-dipping" fashion, to bootstrap an aid and abet of an assault IV into aiding an assault III.

The state responds that this was not a matter of "double-dipping" but, instead, of "simultaneity." That is, once

defendant assisted the primary assailant (his brother), the primary assailant's conduct instantaneously became an assault III and, because defendant was aiding and abetting *that crime*, defendant must necessarily be guilty of an assault III on an aiding and abetting theory.

There is, in truth, an almost metaphysical—or, more precisely, existential—quality to the parties' positions. However, defendant's position is ultimately more persuasive, legally and logically.

Under ORS 161.155(2)(b), governing accomplice liability, a person "is criminally liable for the *conduct* of another constituting a crime" if, with the intent to facilitate the planning or commission of the crime, the person "[a]ids or abets * * * [the] other person in planning or committing the crime." (Emphasis added.) Here, the *"conduct* of another" (his brother) for which defendant was derivatively culpable was the infliction of physical injury on another. *See* ORS 161.085(4) (defining "conduct" as "an act or omission and its accompanying mental state"); ORS 161.085(1) (defining an "act" as "a bodily movement"). Thus, the operative "conduct" constituted assault IV—and defendant could be liable only for aiding and abetting an assault IV.

Beyond those legal principles, defendant's "double-dipping" argument rings true. If the state is correct, defendant's conduct in aiding his brother's assault can be used twice—first to convert his brother's assault IV into an assault III and, then, to convert what would otherwise have been defendant's aid and abet of an assault IV into an aid and abet of an assault III. The imposition of enhanced criminal liability should not be so contrived. The simple—and correct—answer is that defendant can be guilty only of assault IV.[1]

There is another simple answer: If the legislature had wanted to make "actually present" *aiders* of simple

---

[1] Thus, defendant could be convicted of assault IV, while his brother would be convicted of assault III. However, accomplice liability under ORS 161.155 need not be congruent with principal liability. For example, as ORS 161.160(1) provides, in any criminal prosecution based on accomplice liability as described in ORS 161.155, "it is no defense that * * * [s]uch other person [*i.e.*, the principal] * * * has been convicted of a different crime or degree of crime."

assaults liable for assault III, it easily could have done so, without convolution. But it did not. It remains free to do so.

The concurring opinions, of course, reach the opposite result. Three aspects of their reasoning are apparently intractable and deeply troubling.

*First*, the lead concurrence proceeds to legislative history—and, ultimately, bases its holding on that history—without identifying any plausible ambiguity in the text and context of ORS 163.165(1)(e). *See* 181 Or App at 108-12 (Wollheim, J., concurring). What *is* the ambiguity? The text of ORS 163.165(1)(e) could not be clearer: The person who inflicts physical injury while being aided by *another* is guilty of assault III. As noted, one might argue that the *aider* might be liable on an aiding and abetting theory, but that potential turns on the proper application of the aiding and abetting statutes—and does not create an ambiguity in ORS 163.165(1)(e). Thus, the majority's resort to legislative history is improper under *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993).[2]

*Second*, it is unclear whether the lead concurrence concludes that an "actually present" aider is primarily liable under ORS 163.165(1)(e), derivatively liable under ORS 161.155(2)(b), or some mix-and-match hybrid of the two. If anything, the lead concurrence's analysis seems to uncomfortably straddle disparate, even contradictory, theories.

*Third*, to the extent that the lead concurrence's analysis is a confection of different theories, it does not explain how defendant can simultaneously occupy multiple statuses within the same crime. That is, the lead concurrence does not explain how defendant can, at the same time, be vicariously culpable for his brother's assault while personally culpable—and, thus, somehow filling the role of *"another* person" actually present—for aiding that assault. Indeed, taken to their logical extension, both concurring opinions seem to

---

[2] Ironically, the legislative history that the lead concurrence invokes seems to suggest that the *aider* can be *primarily* culpable. That result finds no support in the statute's plain language.

say that defendant is liable for assault III because he vicariously stepped into his brother's shoes as the actual assailant and then simultaneously aided "himself."

In the end, whatever the shadings of their analysis, the concurring opinions have effectively rewritten ORS 163.165(1)(e). That we cannot do. *See* ORS 174.010 (when construing statutes, court is "not to insert what has been omitted, or to omit what has been inserted"). Because the disputed instruction materially misstated the law, defendant is entitled to a new trial.

Landau, Armstrong, Kistler and Brewer, JJ., join in this dissent.

**ARMSTRONG, J.,** dissenting.

I join in Judge Haselton's dissent. I write separately, however, to respond to the analysis by which Judge Edmonds would affirm defendant's conviction for third-degree assault. As Judge Edmonds appropriately notes, ORS 161.155(2)(b) makes a person

> "criminally liable for the conduct of another person constituting a crime if:
>
> "* * * * *
>
> "(2)   With the intent to promote or facilitate the commission of the crime the person:
>
> "* * * * *
>
> "(b)   Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime[.]"

Given that provision, Judge Edmonds concludes that defendant could be liable for third-degree assault if he physically assaulted Stemson while aided by Pine or if he aided or abetted Pine in Pine's physical assault of Stemson. Consequently, the trial court did not err in its instruction to the jury about the bases on which it could convict defendant for third-degree assault. 181 Or App at 115-16 (Edmonds, J., concurring).

The problem that I have with that analysis is that it fails to take into account the effect of ORS 161.165(2). That statute provides that,

"[e]xcept as otherwise provided by the statute defining the crime, a person is *not* criminally liable for conduct of another constituting a crime if:

"\* \* \* \* \*

"(2)   The crime is so defined that the conduct of the person is necessarily incidental thereto."

(Emphasis added.) The crime of third-degree assault that is at issue in this case is defined to require that the person who injures the victim be "aided by another person actually present." ORS 163.165(1)(e). Thus, it is a necessary incident of third-degree assault that a person aid the person who injures the victim. Because it is a necessary incident of the crime, the aid that the person provides does not result in criminal liability to that person for third-degree assault for the injuries caused to the victim. Consequently, the trial court erred in the instruction that it gave on the grounds on which defendant could be convicted for third-degree assault.[1]

---

[1] Judge Edmonds argues in his concurrence that ORS 161.165(2)(b) should be interpreted narrowly to exclude from criminal liability only those people who do not act as accomplices of people who commit criminal acts. 181 Or App at 117-18 (Edmonds, J., concurring). I disagree. At a time when abortion could constitute a crime, *see* ORS 435.455 (1971), the commentary to the proposed Oregon criminal code identified a woman who obtains an abortion as someone who would be exempted from liability by ORS 161.165(2) for the criminal conduct of the person who performed the abortion. Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report (July 1970) § 15, 14. In that context, the woman who procured the abortion would appear to be an accomplice to the termination of her pregnancy with the person who terminated it, yet she would be exempted by ORS 161.165(2) from liability for the termination. Hence, I do not believe that ORS 161.165(2) is intended to exclude from liability only people who cannot be considered to be accomplices in the commission of the proscribed act.